UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CARVER MIDDLE SCHOOL
GAY-STRAIGHT ALLIANCE, an
unincorporated association; and H.F.,
a minor by and through parent Janine
Faughnan,

    Plaintiffs,

v.                              CASE NO. 5:13-cv-623-oc-10 PRL

SCHOOL BOARD OF LAKE
COUNTY, FLORIDA,

    Defendant.

_____

## DEFENDANT, THE SCHOOL BOARD OF LAKE COUNTY FLORIDA'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT WITH MEMORANDUM OF LAW IN SUPPORT

Defendant, the School Board of Lake County, Florida (hereafter "School Board") pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure, and Local Rule 3.01, files this Motion to Dismiss Plaintiffs' Complaint with Prejudice with Memorandum of Law In Support, requests dismissal of the Complaint <u>with prejudice</u> (alternatively without prejudice), and as grounds for such states:

    1. The Plaintiffs do not have standing to assert the claims alleged.

    2. The Plaintiffs' Complaint generally fails to state a claim upon which relief can be granted against The School Board, does not comply with the basic pleading requirements of Rules 8 and 10, Fed.R.Civ.Pro. and *Bell Atlantic Co. v. Twombly,* and should be dismissed with prejudice.

    3. The Equal Access Act is not applicable to any students, student clubs, or associations

at Carver Middle School or any other middle school, and does not govern the relationship between the parties as a matter of law.

4. The First Amendment was at all times complied with by the School Board and the Superintendent, and the Plaintiffs' First Amendment claim is not viable as a matter of law. The restrictions set forth by the School Board were reasonable restrictions upon student expression within a middle school given the nature of the forum, the nature of the expression and the age and maturity level of middle school students.

5. Plaintiffs have failed to state a claim for relief under 42 U.S.C. §1983.

WHEREFORE, Defendant, the School Board of Lake County, Florida respectfully requests this Court to dismiss the Plaintiffs' Complaint with prejudice and any such other relief the Court deems appropriate.

## MEMORANDUM OF LAW

### I. PLAINTIFFS DO NOT HAVE STANDING

In order to have associational standing for an unincorporated association to assert the claims of its members, the association must show that the members would otherwise have standing to sue in their own right; the interests at stake are germane to the organization's purpose;, and neither the claim nor the relief requested requires participation of the individual members. *Ouachita Watch League v.* Jacobs, 463 F. 3d 1163, 1170 (11th Cir. 2006). In order for Plaintiff, a member, to have standing to assert the Constitutional claims contained in Plaintiffs' Complaint, Plaintiff, H.F. must show that: (1) She has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be

redressed by a favorable decision by the court. *Sierra Club v. Johnson*, 436 F.3d 1269,1275 (11th Cir. 2006).

In the instant case, the Plaintiff H.F. does not have standing because she has not suffered a concrete and particularized injury, for the reasons discussed elsewhere in this Motion. The Plaintiff has not been disciplined or reprimanded for any of her expression, and no First Amendment violation has occurred by virtue of the School Board's facially-neutral Policy regarding clubs that are school-sponsored. The Plaintiff has not been prohibited from or disciplined for engaging in any pure expression, but rather, well within their rights, the School Board has determined the activities that are going to be school-sponsored. The GSA is not prohibited from meeting of their own volition, in compliance with the School Board's facilities' use policy, upon school facilities. The GSA simply does not meet the criteria to form a school-sponsored club under School Board Policy 4.502. As such, the interests at stake in this case are not germane to the GSA's stated purpose. Accordingly, since Plaintiff H.F. has no standing, the Plaintiff GSA cannot have standing either.

## II. FED. R. CIV. PRO. RULES 8 AND 12(b)(6) – FAILURE TO STATE A CLAIM GENERALLY

The Plaintiffs' allegations on their face are insufficient as a matter of law. Neither of the counts contains factual allegations, and only contains legal conclusions with little support in any of the "facts." Plaintiff failed to allege sufficient facts to support a claim under the Equal Access Act or the First Amendment. There are no facts alleged that would support a claim that any Constitutional violation occurred, let alone that any policy or custom of the School Board is the "moving force" behind any Constitutional violation, as required to support a violation of 42 U.S.C. §1983. The Plaintiffs' Complaint as a whole fails to state a claim upon which relief can

be granted. Pursuant to Rule 12(b)(6), Fed.R.Civ.P., a claim is subject to dismissal either because it asserts a legal theory that is not cognizable as a matter of law or because the factual tale alleged is implausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 544, 555, 570 (2007). Fed. R. Civ. P. Rule 8 requires a "short and plain statement of the claim" (commonly referred to as "notice pleading") showing entitlement to relief. While notice pleading may not require that the pleader allege a "specific fact" to cover each element of the claim, it is still necessary that a complaint contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory. A pleader must do more than merely incant labels, conclusions, and the formulaic elements of a cause of action. Further, a court will not accept as true bald assertions couched as "facts," legal conclusions masquerading as facts or conclusions contradicted by the Complaint or its exhibits. *Reyes v. City of Miami Beach*, 2008 U.S. Dist. LEXIS 20087, at 11 (S.D. Fla. 2008), citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554, 127 S. Ct. at 1964 (Notice pleading not satisfied with only vague and conclusory allegations that do not advise the defendant what actions he is alleged to have taken). *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009); *Twombly,* 550 U.S. at 544; *Roe v. Aware Woman Center for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001)(quotations omitted). When considering a 12(b)(6) Motion, the Plaintiffs' legal conclusions should be isolated, so as to uncover the pleading's pure factual allegations. Those allegations will then be examined for plausibility. *Iqbal*, 127 S.Ct. at 1967. Pleadings that are unable to "show" the requisite plausible entitlement to relief are thereby exposed by Rule 12(b)(6) at an early stage in order to minimize the costs of time and money by the litigants and the courts. *Twombly*, 550 U.S. at 558.

In the instant case, if the legal conclusions contained in the Plaintiffs' Complaint were to be isolated, there would be few, if any, factual allegations remaining; certainly, insufficient factual allegations to satisfy the "plausibility" requirement of *Twombly* or notice pleading. Rule 8 does not empower a Plaintiff to plead the bare elements of a cause of action, "affix the label 'general allegation' and expect [her] complaint to survive a Motion to Dismiss." *Iqbal*, 127 S. Ct. at 1954. There are insufficient facts alleged in the separate counts in the Complaint to demonstrate a legal basis for liability, establish the elements of a viable legal claim, or provide justification for the requested relief. Each count incorporates by reference 35-36 allegations. This practice has been repeatedly disfavored by both State and Federal Courts. *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001); *Cramer v. State of Fla.*, 117 F. 3d 1258, 1263 (11th Cir. 1997) (Shotgun pleading prohibited). *Frugoli v. Winn Dixie Stores, Inc.* 464 So.2d 1292 (Fla. 1st DCA 1985).

## II. THE EQUAL ACCESS ACT IS INAPPLICABLE AND COUNT I MUST FAIL

The argument by plaintiff that the School Board is required to allow access for all non-curricular clubs at a public school if one non-curricular club is permitted on campus ( a limited open forum) is only valid where the Equal Access Act applies. The Equal Access Act applies only to secondary schools "as determined by state law." Therefore, it applies only to schools that are defined as "secondary schools" by Florida law.

Plaintiff argues that the School Board must permit the plaintiff to form a GSA club at the Carver Middle School because the federal Equal Access Act mandates that result. However, in order to fall under the purview of the federal Equal Access Act the school in question must be a secondary school under Florida law.

"It shall be unlawful for any public secondary school which receives

Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings." 20 U.S.C. §4071(a).

The definition of "secondary school" as used in the Equal Access Act is found in 20 U.S.C.A. §4072: "The term 'secondary school' means a public school which provides secondary education <u>as determined by state law</u>." (Emphasis supplied).

Prior to July 1, 2013 Section 1003.413, Florida Statutes was the only location in the Statutes that specifically referenced a definition for "secondary schools" That section of the Florida Statutes, which was titled "Florida Secondary School Redesign Act," provided "secondary schools are schools that primarily serve students in grades six through twelve...". *Fla. Stat. §1003.413(1)*.

On July 1, 2013, Florida's Senate Bill 1076 was enacted. Section 12 of that Bill repealed Section 1003.413, Florida Statutes. With the deletion of that definition in Section 1003.413, there remain fifty to sixty references in the Florida Statutes to "secondary school." Unfortunately, in most instances those definitions are inconsistent. In some places the statute lists (in discussing a particular point) schools as elementary and secondary schools. In other places, it identifies schools as elementary, middle schools and secondary schools.

However, when looking specifically at the definition section of Chapter 1003 of Florida's School Code, there is a definitive statement that 'School' means an organization of students for instructional purposes on an elementary, middle or junior high school, secondary or high school, or other public school level authorized under Rules of the State Board of Education, *Fla. Stat. §1003.01*.

It must be assumed that the Legislature knew what it was referring to when it established a list of definitions. *American Bankers Ins. Group v. U.S.*, 408 F.3d 1328, 1332-35 (11th Cir. 2005); *Koile v. State, 934 So.2d 1226 (Fla. 2006)*. A middle school cannot be a secondary school if the two are identified side by side. Although the use of different terms to identify schools has fluctuated over the years, it seems apparent, at least to the legislature, that a middle school is not a secondary school.

Additionally, in looking at the totality of all of the references in the statutes, a reasonable interpretation is that secondary schools are intended to be high schools. This is particularly the case in several statutes, including those governing provisions of dual enrollment, where it provides that only students in secondary schools are allowed to participate in dual enrollment. *Fla. Stat. §1007.271*. That has been interpreted by the Department of Education and by the school districts in the state as permitting participation only by those students attending high school.

The case law interpreting the Equal Access Act also supports a determination that only high school age students are subject to its requirements and the cases explain the reasoning behind that philosophy. As is outlined in Section III of this memorandum, the case law relies on the difference in maturity between high school and younger students. The cases supporting Plaintiffs' argument for equal access, if the Equal Access Act applied, refer specifically to high school students and the level of maturity and understanding of high school students, and not to Middle School students.

"…Congress specifically rejected the argument that high school students are likely to confuse an equal access policy with state sponsorship of religion." *Board of Education of*

*Westside Community Schools v. Mergens*, 496 U.S. 224, 250 (1990). "In 1984, Congress passed the EAA to both guarantee and protect the rights of public high school students." *Boyd County High School Gay Straight Alliance v. Board of Education of Boyd County*, 258 F. Supp. 2d 667, 680 (E.D. Ky. 2003).

On June 14, 2011 Arne Duncan, appointed as the U.S. Secretary of Education in 2009, wrote and posted "Key Policy Letters from the Education Secretary and Deputy Secretary." It was generally a statement that GSA groups have been prevented from forming clubs. He noted the passage of the Equal Access Act in 1984 and advised that DOE's General Counsel was putting out guidelines to prevent discrimination. He goes on to state that:

> "Although specific implementation of the Equal Access Act depends upon contextual circumstances, these guidelines reflect basic obligations imposed on public school officials by the Act and the First Amendment to the U.S. Constitution. The general rule, approved by the Supreme Court, is that a <u>public high school</u> that allows at least one noncurricular student group to meet on school grounds during noninstructional time (e.g. , lunch, recess, or before or after school) may not deny similar access to other noncurricular student groups, regardless of the religious, political, philosophical, or other subject matters that the groups address." (Emphasis supplied)

It seems then that the Secretary of Education is interpreting the reach of the Equal Access Act in the same manner as the School Board, which has interpreted that it is not applicable in Florida for Middle School children.

### III. <u>PLAINTIFF CANNOT ASSERT A CLAIM FOR A FIRST AMENDMENT VIOLATION AS A MATTER OF LAW</u>

The Constitutional rights of students in public schools are not automatically coextensive with the rights of adults (or even children) "in other settings." Put differently, "when minors speak in public schools, the Supreme Court has held that what is good for the goose is not

invariably good for the gander." *Morgan v. Swanson*, 659 F.3d 359,374-75 (5th Cir. 2011), citing *Morse v. Frederick*, 551 U.S. 393,401(2007). A court should evaluate student speech claims "in light of the special characteristics of the school environment," beginning by categorizing the student speech at issue. *Morgan*, 659 F.3d 359, 374-75. Where, as here, the speech restrictions are alleged to be viewpoint-specific, the Court should decide whether to apply the general rule of *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 506, 89 S.Ct. 733, 736 (1969) or the *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 268, 108 S. Ct. 562, 568 (1998) rule that applies to curricular or "school-sponsored speech or expression."

After *Tinker,* the Supreme Court refined the framework for analyzing First Amendment claims in the public school context. There are four clear categories of expression: vulgar expression, pure student expression, government expression, and school-sponsored expression. The student expression at issue in this case clearly falls into the category of "school sponsored." Educators enjoy far greater latitude to regulate "school-sponsored" expression and are compliant with the First Amendment as long as their actions are "reasonably related to legitimate pedagogical concerns." *Hazelwood,* 484 U.S. at 273. Although it is clear that the GSA as a club is not an extension of the curriculum for purposes of School Board policy 4.502, it is equally clear that the GSA is asking for the club to be "school-sponsored." *See Complaint, Par. 17.* School Board Policy 4.502 permits the formation of only "school-sponsored" clubs at the middle school level, and only those clubs that are an extension of the curriculum or are otherwise "curricular" student groups. As such, the School Board clearly has the authority to regulate the content of the expression related to any student clubs that seek to be formed and "school sponsored."

The critical inquiry in deciding whether speech is "school-sponsored" is whether it could be reasonably understood to bear the school's sanction or approval. Relevant considerations include (1) Where and when the speech occurred; (2) to whom the speech was directed and whether recipients were a "captive audience"; (3) whether the speech occurred during an event or activity organized by the school, conducted pursuant to official guidelines, or supervised by school officials; and (4) whether the activities where the speech occurred were designed to impart some knowledge or skills to the students. *Morgan*, 659 F.3d at 375-77. To be considered "curricular," for purposes of a First Amendment analysis, expressive activities need not occur in a traditional classroom setting; instead, expressive activities are curricular so long as they are merely (1) supervised by faculty members, and (2) designed to impart particular knowledge or skills to student participants and audiences. *Bannon v. School Dist. of Palm Beach Co.*, 387 F. 3d 1208 (11th Cir. 2004). Not only does School Board Policy 4.502 provide that "middle school clubs are an extension of the curriculum," and "must be sponsored by the school," the Plaintiffs have asked for precisely that. The GSA requests to have the club meet at the school, use school resources and staff, have their finances accounted for by the school, and hold social activities on campus; the speech is directed to a captive audience of middle school students; the speech would occur during activities conducted pursuant to official club guidelines and supervised by school officials; be featured in school yearbooks and publications; utilize school communication mediums; and the speech, according to the GSA, may be designed to impart some knowledge or skills to its student members. *Plaintiffs' Complaint, Par. 17 and 21-22.*

Plaintiffs' argument that the expression at issue is "pure student expression,' and should

be governed by the standards in *Tinker* is without merit. This is not a case where the School Board has restricted any student from personal speech while at school or "pure student expression." There is no allegation that any student was disciplined, punished, or restricted from discussing the topics promoted by the GSA during lunch, class period breaks, in the halls, or in other situations where students may potentially be afforded more First Amendment protection under *Tinker*. Under *Tinker* School officials can restrict such "pure student expression," if they can "reasonably forecast" that the expression at issue would substantially and materially interfere with the appropriate discipline, cause significant disruption in school, or interfere with the rights of other students. *Morgan,* 659 F.3d at 375-6; *Bannon v. School District of Palm Beach Co.*, 387 F.3d 1208, 1212 (11th Cir. 2004). Even under a *Tinker* analysis, the School Board's restrictions in this case are more than reasonable. *Tinker*, 393 U.S. at 508, 89 S.Ct. at 737; see also *Heinkel ex rel Henkel v. School Bd. of Lee Co. Fla.*, 194 Fed. Appx. 604 (2006), quoting *Walker-Serrnao ex rel. Walker v. Leonard,* 325 F.3d 412, 416 (3d Cir. 2003)(Any analysis of the students' rights to expression…and of schools' need to control behavior and foster an environment conducive to learning on the other, must necessarily take into account the age and the maturity of the student."). In *Heinkel,* the court held that a middle school student's constitutional "as-applied" challenge to the school district's policy which ultimately prohibited her from distributing materials about abortion and abortion alternatives to her classmates, ages 11-14, failed to establish a First Amendment violation. *Id.* at 609-10. The Court found persuasive the school district's rationale that abortion is not discussed in the curriculum or the school setting, because it is a "very emotional issue" that may cause some "anger" and "becomes disruptive to the educational setting." *Id., citing Shanley v. Northeast Ind. School Dist.,* 462 F.2d 960, 973-974

(5th Cir. 1972) ("If the content of a student's expression could give rise to a disturbance from those who hold opposing views, then it is certainly within the power of the school administration to regulate the time, place and manner... with even greater latitude of discretion."). Sexuality, including homesexuality and bullying based upon sexual identity, is clearly a "controversial" topic likely to cause significant disruption in the educational community, particularly in the middle school setting. This is so much as admitted by the Plaintiff in the Complaint by virtue of the stated purpose of the GSA. However, since the student expression in this case is clearly "school sponsored," this Court should utilize the First Amendment analysis set forth in *Hazelwood* to determine that the expression at issue is entitled to less protection under the First Amendment.

In addition to the greater latitude afforded to schools in regulating school-sponsored expression, many Courts have held that the same First Amendment Rights that apply to high school students do not apply to elementary school students. Similarly, a school must be able to take into account the emotional maturity of the intended audience in determining whether to dissimenate student speech on potentially sensitive topics. *Morgan,* 659 F. 3d at 378-380, citing *Hazelwood,* 484 U.S. at 272. Further, like elementary students, middle school students are typically in the age range of 11-14, some not even newly teenagers, and the young students are just beginning to acquire the means of expression. *Id.* Courts have held that school's efforts to prevent "advocacy" in classroom activities, religious, political or even commercial (and in this case, sexual), is a legitimate educational purpose, particularly given younger students' impressionability. *Id.* Children younger than high school age may not be able to fully recognize and appreciate the difference between government and private speech.... And a school's

neutrality could more easily be misperceived as endorsement, rather than neutrality. *Id. at* 381, citing *Walz v. Egg Harbor Township Bd. of Ed.,* 342 F. 3d 271,277(3rd Cir. 2003). There can be little doubt that speech appropriate for eighteen year- old high school students is not necessarily acceptable for younger students. Courts have held that human sexuality provides the most obvious example of age-sensitive matter. *Walker v. Serrano*, 325 F. 3d 412, 416-17 (3rd Cir. 2003). Young students demand a far greater level of guidance, which is fundamental to a public school's mission. *Id.* By contrast, in a high-school setting, "students are mature enough and are likely to understand that a school does not endorse speech that it merely permits on a nondiscriminatory basis." *Id.* The legitimacy, intent, and reasonableness of the School Board's policy and decision regarding restriction of the clubs allowed in middle schools is solidified by the fact that the GSA **is allowed** in Lake County High Schools. The GSA is permitted to apply as a student group in Lake County high schools, and the only application received for such a group was approved. It is also noteworthy that the prior GSA student-member's action cited by the Plaintiffs and attached to the Complaint, is now in the high school setting where the GSA is allowed; yet this student fails to take advantage of her ability to form and participate in such a club. Analysis of the restrictions upon high school student expression under the First Amendment is not applicable to the instant analysis, as those cases involved high school students, not middle school students. This case is more analogous to the First Amendment cases involving elementary school students, where schools may regulate student expression more freely. Plaintiffs have not cited one middle school case allowing such a club or supporting the theory that the same analysis that applies to students in high schools. High school students range in age from 14-18, and many are charged with many "adult" responsibilities such as driving a

car, maintaining a job, or being on the verge of adulthood. The maturity level and ability of high school students to differentiate between what the school **allows** to avoid discrimination versus what the school **endorses** is much different than middle school students. In fact, other categories of First Amendment analysis, Courts have repeatedly recognized the lower level of First Amendment protection afforded to middle school students, and use of a middle school as a forum is governed by the school board's intent. *Heinkel,* 194 Fed.Appx. at 609-610; *M.A.L. v. Kinsland,* 543 F.3d 841, 846-847(6th Cir. 2009); *Campbell v. St. Tammany Parish School Bd.,* 231 F.3d 937, 940-41(5th Cir. 2000)(Since a middle school is not a traditional public forum, the type of forum created by policy is a function of the intent of the school board). There are no heterosexual clubs or clubs regarding sexuality or sexual expression, of any kind approved at the middle school level either, which tends to negate Plaintiffs' argument that the School Board is discriminating solely based upon viewpoint. The clubs allowed are clearly an extension of the school curriculum or bear a direct correlation to the curriculum or athletics.[1] The law is clear that schools may regulate the content of speech without violating the First Amendment. *Bannon,* 387 F.3d at 1215-16. Plaintiff would be remiss to argue that all content should be permissible and school-sponsored in a middle school setting, where students ages 11-13 or 14 at best are attending, simply based on an unsupportable conclusion that the topic, though it bears no correlation to the curriculum, promotes "critical thinking." *Id.* It is a well-recognized principle that agencies, like the School Board, are afforded great deference in interpreting their own policies and regulations they are responsible for enforcing. *Auer v. Robbins,* 519 U.S. 452, 117 S. Ct. 905(1997); *Cagle v. St. Johns County School Dist.,* 939 So.2d 1085, 1088-89 (5th DCA

---

[1] The Plaintiff cites to AVID, a club permitted to form under the School Board Policy, as support of its argument that the School Board has committed viewpoint discrimination; however, AVID is part of the school's curriculum, so this argument is without merit

2006)(Administrative agencies are afforded wide discretion in the interpretation of statutes and application of policies they are give the powers and duties to administer; if the agency's interpretation is within the range of possible and reasonable interpretations, it should be affirmed). Pursuant to the School Board's reasonable interpretation of its own policy, and quite frankly, any <u>reasonable</u> interpretation, the GSA is not permissible student group in the middle-school setting.

### IV. <u>PLAINTIFFS' §1983 CLAIMS MUST FAIL</u>

To adequately plead a §1983 claim, Plaintiffs must show that the alleged Constitutional violation was caused by some official policy. *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 694-95(1977); *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991). In order for a local government entity to be liable for a §1983 claim, an official policy or custom must be the <u>moving force</u> behind the alleged Constitutional violation. There is no evidence that any Constitutional violation occurred, let alone that a School Board Policy was the cause of a constitutional violation or other violation of any claims that can be permissible through the mechanism of §1983.

### <u>CONCLUSION</u>

The Complaint contains egregious pleading deficiencies and fails to state a viable claim for relief under any theory, evidencing that dismissal <u>with prejudice</u> is appropriate, and allowing further amendment would be futile and would be a waste of time, effort, and judicial resources. Dismissal with prejudice is clearly proper where, as here, there was a complete failure to comply with Fed. R. Civ.P. Rule 8, and allowing further amendment would be futile. *Dismuke v. University of South Fla. Bd. Of Trustees,* 2006 WL 166456, *3 (M.D. Fla. 2006).

WHEREFORE, the School Board of Lake County, Florida, respectfully requests this Court to dismiss the Plaintiffs' Complaint with prejudice, and any such other relief the Court deems appropriate.

Respectfully submitted this 29th day of January, 2014.

BY: _____
STEPHEN W. JOHNSON, ESQ.
Florida Bar No. 269867
STEPHANIE J. MCCULLOCH, ESQ.
Florida Bar No. 0638161
McLinBurnsed
Post Office Box 491357
Leesburg, Florida 34749-1357
(352) 787-1241 Telephone
(352) 326-2608 Facsimile
Email: SteveJ@mclinburnsed.com
StephM@mclinburnsed.com
Trial Counsel for Defendant, The School Board of Lake County, Florida

**CERTIFICATE OF SERVICE**

I hereby certify that on the 29th day of January, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send a notice of electronic filing to the following: Daniel B. Tilley at dtilley@aclufl.org, ACLU Foundation of Florida, Inc., Suite 340, 4500 Biscayne Blvd, Miami, FL 33137.

By: _____
Stephen W. Johnson

g:\user\sam\lcsb\carver m.s. gsa v lcsb\mtn-dismiss_swj-sjm_final (3).doc