CARVER MIDDLE SCHOOL
GAY-STRAIGHT ALLIANCE, an
unincorporated association; and H.F.,
a minor by and through parent Janine
Faughnan,

      Plaintiffs,

v.                            CASE NO. 5:13-cv-623-oc-10 PRL

SCHOOL BOARD OF LAKE
COUNTY, FLORIDA,

      Defendant.

_____/

## DEFENDANT, THE SCHOOL BOARD OF LAKE COUNTY FLORIDA'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT WITH MEMORANDUM OF LAW IN SUPPORT

Defendant, the School Board of Lake County, Florida (hereafter "School Board") pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Local Rule 3.01, files this Response in Opposition to Plaintiffs' Motion for Summary Judgment with Memorandum of Law in Support, and as grounds for such states:

1.      The Equal Access Act is not applicable to any students, student clubs, or associations at Carver Middle School or any other middle school, and does not govern the relationship between the parties as a matter of law.

2.      There is no basis to suggest liability of the School Board under 42 U.S.C. s. 1983 or otherwise prove an intentional violation of the Equal Access Act as a matter of law.  At a minimum, there are genuine issues of material fact, and the Plaintiffs' motion is premature as there are pending depositions of the Plaintiffs to be taken after this response is due.

WHEREFORE, Defendant, the School Board of Lake County, Florida respectfully requests this Court to deny the Plaintiffs' Motion for Summary Judgment and grant any such other relief the Court deems appropriate.

## MEMORANDUM OF LAW

## THE EQUAL ACCESS ACT IS INAPPLICABLE TO MIDDLE SCHOOLS IN FLORIDA

The argument by Plaintiffs that the School Board is required to allow access for all non-curricular clubs at a public school if one non-curricular club is permitted on campus (a limited open forum) is only valid where the Equal Access Act applies. The Equal Access Act applies only to secondary schools "as determined by state law." Therefore, it applies only to schools that are defined as "secondary schools" by Florida law.

Plaintiffs argue that the School Board must permit the plaintiff to form a GSA club at the Carver Middle School because the federal Equal Access Act mandates that result. However, in order to fall under the purview of the federal Equal Access Act, the school in question must be a "secondary school" under Florida law.  The Equal Access Act, in relevant part provides:

> "It shall be unlawful for any public secondary school which receives Federal financial assistance and which has a limited open forum to deny equal access or a fair opportunity to, or discriminate against, any students who wish to conduct a meeting within that limited open forum on the basis

of the religious, political, philosophical, or other content of the speech at such meetings." 20 U.S.C. §4071(a).

The definition of "secondary school" as used in the Equal Access Act is found in 20 U.S.C.A. §4072: "The term 'secondary school' means a public school which provides secondary education <u>as determined by state law</u>." (Emphasis supplied).

Chapter 1003, Florida Statutes, by virtue of obvious nomenclature governs "Public K-12 Education" and contains its own definitions' section. Specifically, Section 1003.01, Florida Statutes, sets forth the definitions that apply to "Public K-12 Education." Section 1003.01(2) contains a definitive statement that 'School' means an organization of students for instructional purposes on an elementary, <u>middle or junior high school</u>, <u>secondary or high school,</u> or other public school level authorized under Rules of the State Board of Education, *Fla. Stat. §1003.01(2)(Emphasis supplied).*

The Plaintiffs accurately stated in their Motion for Summary Judgment that prior to July 1, 2013 Section 1003.413, Florida Statutes was the only location in the Florida Statutes that specifically referenced a definition for "secondary schools." That section of the Florida Statutes, which was titled "Florida Secondary School Redesign Act," appeared to be in conflict with Section 1003.01(2), and provided: "secondary schools are schools that primarily serve students in grades six through twelve...". *Fla. Stat. §1003.413(1).* However, on July 1, 2013, Florida's Senate Bill 1076 was enacted. Section 12 of that Bill repealed Section 1003.413, Florida Statutes. To the contrary, the definition of "School" contained in *Fla.Stat. §1003.01(2)* remains in effect.

"Legislative intent is the polestar of statutory interpretation." *Patel* at 1243. To discern legislative intent, courts must look first and foremost at the actual language of the statute. *Patel*

at 1243; *DeGregorio v. Balkwill*, 853 So.2d 371, 373 (Fla. 2003). When language in the statute is clear and unambiguous and conveys a clear and definite meaning, the statute must be given its plain and obvious meaning. *Patel* at 1243; *Knowles v. Beverly Enterprises Florida, Inc.*, 898 So.2d 1 (2005)(When the language of the statute is clear and unambiguous, and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation. Courts are without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express terms or its reasonable and obvious implications). *Id.* When engaged in the task of discerning the meaning of a statute, courts will not look merely to a particular clause in which general words might be used, but will take in connection with it the whole statute. *Quarantello v. Leroy*, 977 So.2d 648, 651 (Fla. 5th DCA 2008). Courts are required to give effect to every word, phrase, sentence, and part of the statute, and words in a statute should not be construed as mere surplusage. *Id.* at 652; *American Home Assur. Co. v. Plaza Materials Corp.*, 908 So.2d 360, 366 (Fla. 2005). The Legislature does not intend to enact useless provisions, and courts should avoid readings that would render part of a statute meaningless. *Id.* Courts must presume that the legislature does not intend to keep contradictory enactments on the books or to affect so important a measure as the repeal of a statute (such as Section 1003.413) without expressing an intention to do so. *Knowles,* 898 So. 2d at 9.

Here, the definitions' section contained in Section 1003.01 is clearly intended to apply to the entire Chapter, which by its plain language governs all aspects of "Public K-12 Education." It must be assumed that the Legislature knew what it was referring to when it established a list of definitions. *American Bankers Ins. Group v. U.S.*, 408 F.3d 1328, 1332-35 (11th Cir. 2005); *Koile v. State, 934 So.2d 1226 (Fla. 2006).* A middle school cannot be a secondary school if the

two are identified side by side. As this Court noted in its Order denying the Plaintiffs' Motion for Preliminary Injunction, the unambiguous language of the statute favors the position of the School Board. The clear language combined with the placement of the commas separate the schools into three different tiers or levels: (1) elementary; (2) middle or junior high school; and (3) secondary or high school. *Order, Doc.17, Pp.12-13.* Although the use of different terms to identify schools has fluctuated over the years, it seems apparent, at least to the legislature, that a middle school is not a secondary school.

Further, although there may be some consistent and inconsistent definitions in other chapters of Florida Statutes as has been noted by all parties in this action. It is a well-recognized principle of statutory construction that courts are only required to adopt the rules of construction of a statutory provision which harmonizes and recognizes it if the two conflicting provisions are contained in the <u>same Act.</u> *Knowles,* 898 *So.2d* at 9-10, citing *Woodgate Dev. Corp. v. Hamilton Inv. Trust,* 351 So.2d 14, 16. Here, the Plaintiffs cite to numerous statutory provisions to support their position; however, the majority of those provisions are contained outside of the "Education Code" provisions of Florida Statutes. Even if the conflicts references were contained in the same Act, there must be "a hopeless inconsistency" between different statutes before rules of construction are applied to defeat the plain language of one of the statutes. *Knowles,* 898 So. 2d at 9-10. Other than the definition contained in Chapter 1003 (which as noted above, applies to "Public K-12 Education") there remain fifty to sixty references in the entirety of Florida Statutes to "secondary school." Unfortunately, in most instances those definitions are inconsistent. In some places the statutes describe (in discussing a particular point) schools as elementary and secondary schools. In other places, it identifies schools as elementary, middle schools and

secondary schools. However here, the legislature repealed the only section contained in Chapter 1003 that provided any directly conflicting definition of "secondary school." As such, since the repeal and effective deletion of the definition of "secondary school" previously contained in s. 1003.413, only the plain and unambiguous language of s. 1003.01(2) remains. There is no longer any inconsistency within Chapter 1003, let alone a "hopeless inconsistency," between 1003.01(2) and 1003.413, and no reason to delve further into the rules of statutory construction, particularly in the face of clear legislative intent regarding how schools are categorized and defined in Florida.

Even so, in looking at the totality of all of the references in the statutes, a reasonable interpretation is that secondary schools are intended to be high schools. This is particularly the case in several statutes outside of Chapter 1003, including those governing provisions of dual enrollment, where it provides that only students in secondary schools are allowed to participate in dual enrollment. *Fla. Stat. §1007.271.* That has been interpreted by the Department of Education and by the school districts in the state as permitting participation only by those students attending high school. The Lake County School Board abides by that interpretation. *See Affidavit of Janice Tobias provided in the School Board's Response in Opposition to Plaintiffs' Motion for Preliminary Injunction and attached herein as Exhibit "A".*

The case law interpreting the Equal Access Act also supports a determination that only high school age students are subject to its requirements and the cases explain the reasoning behind that philosophy. The applicable case law relies on the difference in maturity between high school and younger students. The cases supporting Plaintiffs' argument for equal access, if the Equal Access Act applied, refer specifically to high school students and the level of maturity and

understanding of high school students, and not to Middle School students. Plaintiffs have not cited any case that supports their argument that the provisions of the Equal Access Act applies to Florida Middle Schools.

In fact, leading and often cited cases applying the Equal Access Act seem to reiterate that the Act protects the rights of high school students. "…Congress specifically rejected the argument that high school students are likely to confuse an equal access policy with state sponsorship of religion." *Board of Education of Westside Community Schools v. Mergens*, 496 U.S. 224, 250 (1990). "In 1984, Congress passed the EAA to both guarantee and protect the rights of public high school students." *Boyd County High School Gay Straight Alliance v. Board of Education of Boyd County*, 258 F. Supp. 2d 667, 680 (E.D. Ky. 2003).

On June 14, 2011 Arne Duncan, appointed as the U.S. Secretary of Education in 2009, wrote and posted "Key Policy Letters from the Education Secretary and Deputy Secretary." It was generally a statement that GSA groups have been prevented from forming clubs. He noted the passage of the Equal Access Act in 1984 and advised that DOE's General Counsel was putting out guidelines to prevent discrimination. He goes on to state that:

> "Although specific implementation of the Equal Access Act depends upon contextual circumstances, these guidelines reflect basic obligations imposed on public school officials by the Act and the First Amendment to the U.S. Constitution. The general rule, approved by the Supreme Court, is that a <u>public high school</u> that allows at least one noncurricular student group to meet on school grounds during noninstructional time (e.g. , lunch, recess, or before or after school) may not deny similar access to other noncurricular student groups, regardless of the religious, political, philosophical, or other subject matters that the groups address." (Emphasis supplied). http://www2.ed.gov/policy/elsec/guid/secletter/11060

It seems that the Secretary of Education is interpreting the reach of the Equal Access Act in the same manner as the School Board in this case, which has interpreted that it is not

applicable in Florida for Middle School children. The Lake County School District defines high schools as "secondary schools" and high schools in Lake County provide high school curriculum. Consistent with Section 1003.01(2), Florida Statutes, and the case law interpreting the Equal Access Act, the School Board does not consider middle schools to be "secondary schools." *Moxley Depo., Pp.138-39; Tobias Affidavit, Exhibit "A".*

The "facts" cited by the Plaintiffs in support of the Motion for Summary Judgment are immaterial and serve as nothing more than a red herring as an attempt to avoid acknowledgment of the fact that the Equal Access Act does not govern the relationship between the parties. Clearly a middle school principal's participation in a voluntary and national organization of administrators, calling themselves "secondary administrators," is not of even minimal persuasive authority in determining whether the Florida Legislature or the Lake County School Board recognizes Carver Middle School as a "secondary school."   Equally unpersuasive is the argument, relied upon heavily by the Plaintiffs, that a middle school student may take a high school **level** Algebra I class through virtual school and ultimately receive high school credit for the class (assuming they matriculate from middle school to high school), and that means that middle schools are "secondary schools" or provide "secondary education."   In fact, Ms. Cunningham, the Principal referenced above, also stated that an elementary school student could also take a high-school level course through virtual school and receive similar credit, as long as they had the aptitude to take such a higher-level course. *Cunningham Depo., Pp.23-25;26-28; Moxley Depo., Pp. 138-144.* Ms. Cunningham testified that a small minutia of middle school students participate in virtual school (15-20 out of 843), and only half of those students (7-10 students) have the aptitude to take a high school level course.  Virtual school is also used for

remedial classes. *Cunningham Depo., Pp. 23-29.* Certainly it would lead to an absurd interpretation of "secondary school," if the Court were to follow the reasoning suggested by the Plaintiffs, that Equal Access Act would apply in elementary schools as well, because a high-achieving elementary school child would be deemed to be actually in "secondary school" or receiving the totality of a "secondary education" by virtue of that student being proficient enough to take a higher **level** class. Plaintiffs suggest that by allowing a minute portion of elementary and middle school students to take and receive credit for high school level courses, the School Board has converted elementary and middle schools into "secondary schools" for purposes of the Equal Access Act. This would be an illogical result made possible simply by virtue of the School Board fostering rather than stifling such academic achievement by allowing a student able to perform at such a level and receive credit for the course when he or she finally arrives in **high school**.

When the School Board chose to amend its school club policies before the 2013-14 school year, in obvious awareness of the need for compliance with the Equal Access Act in High Schools, it created two different policies for High Schools and Middle Schools. *Cole Depo., Pp. 22-23.* During the discussion regarding creating the policies, the School Board demonstrated an obvious intent to treat the three tiers of schools and school-aged groups of students differently. *Policy 4.501, 4.502 and 4.503, attached as Composite Exhibit "B" (provided through discovery to the Plaintiffs).* Whereas the policy for high school clubs essentially tracks the language of the Equal Access Act, the policy for middle school student clubs does not. Participation in middle school clubs requires parental permission; high school does not. Similarly, participation in any extracurricular activities in elementary schools requires parental permission. *Policy 4.503;*

*Moxley Depo., P. 43-44.*  In compliance with the Equal Access Act, the School Board Policy for High School Student Clubs allows for a wide variety of both curricular and non-curricular clubs. The School Board, not confined by the requirements of the Equal Access Act, determined that it would only allow student clubs in the middle school setting that were an extension of the curriculum by being: (1) directly related to the school curriculum; (2) an academic honor society or student government; or (3) a club that strengthens or promotes critical thinking, business skills, athletic skills, or performing/visual arts.  All middle school clubs must utilize the same application process; they must complete an application, provide a charter, and information sufficient to qualify the club as a permissible student club under the Policy.  *Moxley Depo., Pp. 50-52; 53-57;59-60.*

During the 2013-14 school year, Aurelia Cole was employed by the School Board as the Chief of Administration for the Lake County Schools.  She was primarily in charge of implementing the policies related to formation of Student Clubs in Middle Schools and High Schools. *Cole Depo., Pp. 7-11.* The GSA completed an application and provided a Charter, but did not provide enough information to qualify the club as a permissible student club under the Policy.  Had it done so, it would have been approved as a club under the School Board's current Policy.  *Moxley Depo., P. 62; Cole Depo., 41-42.*  Ms. Cole directed Ms. Cunningham, the Carver Middle School Principal, to deliver instructions to the teacher/sponsor of the GSA, Ms. Jablonski, that she could resubmit the application with more information to demonstrate that the club fit within the requirements of the Policy so Ms. Cole could approve it; more specifically, that the club would be engaging in activities that "strengthened or promoted critical thinking." Ms. Cunningham confirmed that she informed Ms. Jablonski of the need to resubmit the

application with more information. However, neither Ms. Jablonski nor anyone on behalf of the GSA resubmitted the application. *Cole Depo., Pp. 42-43; 49-50; Cole Affidavit attached to the School Board's Response in Opposition to Plaintiffs' Motion for Preliminary Injunction and attached herein as Exhibit "C"*. Ms. Cole had discussions with the Superintendent about "critical thinking" and what that entails. There are particular strategies involved in "critical thinking" aside from a conclusory statement that a particular club would promote "critical thinking," as the GSA contained in its charter. Ms. Cole testified that she actually hoped the club would resubmit the application so it could properly form under the policy. Ms. Cole also testified that she ultimately made the decision to deny the club application based upon the lack of information submitted by the GSA, with the instructions that they could resubmit it for consideration. Ms. Cole testified that there were other middle school club applications that were either denied for not meeting the criteria within the policy, or because they failed to provide information that the club met the criteria in the policy, and those clubs were all told the same thing as the GSA---to resubmit their applications with more information in order to demonstrate the club had a purpose that was permissible under the Policy. *Cole Depo. Pp. 28-30;35; 40-41; Moxley Depo. Pp. 94-95 and Ex. AK and AL to same*. Had the appropriate information been supplied by the GSA, Ms. Cole testified she would have approved it. *Cole Depo., Pp. 43-44; 50*. The basis for the denial was the solely the GSA's failure to demonstrate their proposed club met the criteria in the Policy. *Moxley Depo., P. 115*.

Although the actual reasons for approval/disapproval of the GSA's application are not relevant to the Plaintiffs' Motion for Summary Judgment because the inapplicability of the Equal Access Act involves a legal determination, it is important to clarify the statements of fact cited

by the Plaintiff, as well as produce evidence to the Court that the School Board, by virtue of its employees, had no intent to unlawfully discriminate against the proposed GSA or its members. The proposed GSA and its members were treated equally with every other student club that wished to form under the School Board's Middle School Student Club Policy. It remains the School Board's position that the Equal Access Act is inapplicable to middle schools in Florida, it is certainly not so clearly established as applicable as to evidence an intentional violation of the Equal Access Act as a matter of law as Plaintiffs suggest.

Other proposed clubs, like the GSA, who failed to demonstrate their compliance with one of the approved criteria in the Policy for middle school student clubs, including "Best Buddies," and "The Fellowship of Christian Athletes," were not approved in the Middle-School setting. *Moxley Depo., Pp. 103-106.* In fact, in one instance, Oak Park Middle School Students applied to form a "Drama Club," and that application was originally denied. There was no drama class at Oak Park Middle School, and after the denial, the application was resubmitted and approved with more information to demonstrate why it met the criteria in the policy. *Moxley Depo., Pp. 94-95; Ex. AK and AL to same.* Cheerleading is not a "club" under the School Board policy, and the approved middle school student "clubs" complied with the criteria in Policy 4.502. See Exhibit "C", Affidavit of Ms. Cole. Further, the only facts in the record are that a student club whose application was denied was able to appeal or request the School Board to overturn the decision of the Superintendent and/or Ms. Cole. Florida law is clear that an entity like the School Board, is not liable based upon a theory of *Respondeat Superior*; therefore, no s. 1983 violation can be proven.

These references to the reasons the club application was denied and citations to the deposition testimonies regarding same are provided only to rebut the factual assertions cited by Plaintiffs. Because the Equal Access Act does not apply to middle schools in Florida, the School Board's Policy for middle-school student clubs was only required to comply with and did in fact fully comply with the requirements of the First Amendment. There were other clubs that were not permitted as referenced above, which may have been permitted if the Equal Access Act did apply to middle schools. If, in fact, the Court finds the Equal Access Act does apply to middle schools in Florida, the School Board concedes it may need to revise its Policy as it pertains to middle school student clubs. It is clear, however, that there is no intent of the School Board to violate the Equal Access Act in the instant case, as at all times the School Board has proceeded with a uniform application of a lawful policy under what it opines is the only restriction---the First Amendment.

Nonetheless, the Plaintiffs' desire to form a student club and their accompanying erroneous interpretations of the applicability of the Equal Access Act should not dissuade the Court from a straight-forward reading of the plain language of Section 1003.01(2) and the basic rules of statutory construction, which dictate the only result in this case consistent with the legislative intent set forth in the Equal Access Act and in Chapter 1003, Florida Statutes, which governs all of Public K-12 Education in Florida. There is nothing in the record to suggest that the School Board's Policy or the actions taken in this case run afoul of the Equal Access Act because it is clearly inapplicable based upon the only logical definition in State law, which clearly equates a "secondary school" to a "high school."

## CONCLUSION

The Equal Access Act is not applicable to middle schools in Florida, and does not govern the relationship between the parties in this case. As such, the Plaintiff's Motion should be denied, and judgment should be entered in favor of the School Board as a matter of law on Count I of the Plaintiffs' Complaint.

WHEREFORE, the School Board of Lake County, Florida, respectfully requests this Court to deny the Plaintiffs' Motion for Summary Judgment, enter judgment in favor of the School Board on Count I of Plaintiff's Complaint, and any such other relief the Court deems appropriate.

Respectfully submitted this **15th day of September, 2014**.

BY:   /s/ Stephen W. Johnson
         STEPHEN W. JOHNSON, ESQ.
         Florida Bar No. 269867
         STEPHANIE J. MCCULLOCH, ESQ.
         Florida Bar No. 0638161
         McLinBurnsed
         Post Office Box 491357
         Leesburg, Florida 34749-1357
         (352) 787-1241 Telephone
         (352) 326-2608 Facsimile
         Email: SteveJ@mclinburnsed.com
         StephM@mclinburnsed.com
         Trial Counsel for Defendant, The School
         Board of Lake County, Florida

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via CM/ECF & e-mail on opposing counsel on this **15th day of September, 2014.**

/s/ Stephen W. Johnson
Stephen W. Johnson
SteveJ@mclinburnsed.com
Stephanie McCulloch
StephM@mclinburnsed.com
McLin Burnsed
1000 West Main Street|P.O. Box 491357
Leesburg, FL 34749
352/787-1241
Counsel for Defendant

**Daniel B. Tilley**
Florida Bar No. 102882
ACLU Foundation of Florida
4500 Biscayne Blvd., Suite 340, Miami, FL 33137
(786) 363-2700
dtilley@aclufl.org

**Benjamin James Stevenson**
Fla. Bar. No. 598909
ACLU Foundation of Florida
P.O. Box 12723, Pensacola, FL 32591-2723
(786) 363-2738
bstevenson@aclufl.org

**Leslie Cooper**
ACLU Foundation
125 Broad Street, 18th Floor, New York, New York 10004
(212) 549-2627
LCooper@aclu.org

CARVER MIDDLE SCHOOL
GAY-STRAIGHT ALLIANCE, an
unincorporated association; and H.F.,
a minor by and through parent Janine
Faughnan,

       Plaintiffs,

v.

       CASE NO. 5:13-cv-623-oc-10 PRL

SCHOOL BOARD OF LAKE
COUNTY, FLORIDA,

       Defendant.

---

## AFFIDAVIT OF JANICE TOBIAS

STATE OF FLORIDA
COUNTY OF LAKE

    ON THIS DAY personally appeared before me, the undersigned officer, duly authorized to administer oaths and take acknowledgments, JANICE TOBIAS, who after being by me first duly cautioned and sworn, upon his oath says:

    1.    I am over the age of eighteen (18) years and have personal knowledge of the matters contained in this Affidavit.

    2.    I am employed as the Director of Student Services for Lake County Schools.

    3.    Florida Statute Section 1007.271(2), which deals with dual enrollment, states that an eligible secondary school student "is a student who is enrolled in a Florida public secondary school or in a Florida private secondary school..." This has been interpreted by the Florida Department of Education and the school districts as permitting dual enrollment only for students in grades 9 through 12 (high school).

    4.    Middle Schools currently established in Lake County serve children in grades 6, 7 and 8. The primary age groups in these grades are ages 11-14.

EXHIBIT __A__

FURTHER AFFIANT SAYETH NAUGHT,

_Janice Tobias_
Janice Tobias

Sworn to and subscribed before me
this 3rd day of February, 2014.

_Evelyn Diaz_
NOTARY PUBLIC - STATE OF FLORIDA
Evelyn Diaz
(Print Name of Notary Public)
FF 007294
(Serial/Commission Number)

EVELYN DIAZ
Notary Public - State of Florida
My Comm. Expires Apr 11, 2017
Commission # FF 007294

Personally Known ✓ or Produced Identification _____

Type of Identification Produced:

g:\user\aam\lcsb\carver m.s. gsa v lcsb\affidavit of jan tobias.docx

## HIGH SCHOOL STUDENT CLUBS AND ORGANIZATIONS

## I. - ALL HIGH SCHOOL CLUBS AND ORGANIZATIONS

(1) This policy applies to all high school clubs and organizations

(2) All high school student clubs and organizations must be approved by the Superintendent before they can operate at a school.

(3) All prospective clubs must submit a District approved application. The application shall include a club charter which shall set forth the purposes, qualifications for members, and the rules of conduct and shall be maintained on file for reference by all students and school employees. Applications for non-curricular clubs must be submitted by a student(s) in attendance at the particular school.

(4) A student club or organization shall not conduct any activity or act which violates Florida Statutes, School Board rules, or the regulations of the school.

(5) Any club or organization which engages in an initiation ceremony for its members shall prepare and submit the program of initiation exercises to the school principal for review and approval.

(6) There shall be no type of hazing in any club or organization within any school. Hazing is defined as any action or situation for the purpose of initiation or admission into or affiliation with any club or organization operating at a school pursuant to this policy, which recklessly or intentionally endangers a student's mental or physical health or safety.

(7) The decision of the members of an organization shall not be one of the factors in selecting additional members.

(8) Any dues charged shall be reasonable and not prohibitive. Admission fees will not be charged.

**Lake 4.501**

EXHIBIT **B**

(9) Secret societies, fraternities and sororities are prohibited per Section 1006.14, Florida Statutes.

## II. - CURRICULAR CLUBS AND ORGANIZATIONS

(1) This section applies to all high school curricular clubs and organizations

(2) Curricular clubs and organizations may be initiated by a student, student group, teacher or principal. They must relate directly to the curriculum of the school. This occurs when:
   (a) The subject matter of the group is actually taught, or soon will be taught, in a regularly offered course;
   (b) If the subject matter of the group concerns the body of courses as a whole;
   (c) If participation in the group is required for a particular course; or
   (d) If participation in the group results in academic credit.

(3) Curricular clubs will be assigned an employee/sponsor by the principal. The employee/ sponsor shall be present at all meetings.

(4) All social events shall be adequately chaperoned.

(5) At the discretion of the School Board and consistent with School Board policy, the employee/ sponsor may be compensated by the school.

(6) All monies accruing to a curricular club or organization shall be accounted for through the school's internal accounting system.

(7) All meetings shall be held on School Board property. This may be waived for special meetings and events upon the faculty sponsor's request and principal's approval.

(8) Any dues charged shall be reasonable and not prohibitive.

## III. – CO-CURRICULAR CLUBS AND INTERSCHOLASTIC EXTRA-CURRICULAR ACTIVITIES

(1) The policy of the Board is to maintain a co-curricular club and interscholastic extracurricular activities program sufficiently varied to meet the wide range of vocational, recreational, social and cultural needs and interests of the students.

(2) Schools may establish co-curricular student clubs associated with national organizations, such as the National Honor Society, student government, debate teams, intramural activities, Vocational Industrial Club of America, Future Business Leaders of America, robotics teams, etc.  To be sponsored these clubs must use student's knowledge or curriculum to develop and expand their critical thinking, politic ability, leadership ability, post-secondary educational, and employability skills.

(3) The schools may also establish interscholastic extracurricular activities. These activities must fall under the guidance and direction of the Florida High School Athletic Association and are subject to the provisions of School Board policy 4.40.

(4) The District defines school sponsored curricular clubs, co-curricular clubs, and interscholastic extracurricular activities as activities that are conducted on or off school premises and under the supervision and guidance of a staff advisor.

## IV. - NON-CURRICULAR CLUBS AND ORGANIZATIONS

(1) This section applies to all high school non-curricular clubs and organizations.

(2) Non-curricular clubs and organizations do not directly relate to the body of courses offered by the school. In accordance with the Equal Access Act, the Board authorizes high school premises to be made available to non-curricular clubs who wish to conduct meetings during non-instructional time. Non- instructional time is defined as the time set aside by the high school in the morning before actual classroom instruction begins or in the afternoon after actual classroom instruction ends, exclusive of the optional periods offered by the Board.

(3) The use of high school premises for these meetings, may be approved by the Superintendent with the following conditions:
    (a) The meeting is voluntary and student-initiated;
    (b) The meeting does not materially and substantially interfere with the orderly conduct of educational activities within the school;
    (c) The meeting may not be directed, conducted, controlled, or regularly attended by non-school persons;
    (d) The meeting does not require additional tax funds; and
    (e) The meeting is not otherwise unlawful.

Lake 4.501

(4) There shall be no sponsorship of the meeting by the school, the School Board, or its agents or employees. Sponsorship includes the act of promoting, leading or participating in a meeting. The assignment of an employee to a meeting for custodial purposes does not constitute sponsorship of the meeting. Employees or agents of the School Board or school may be present at meetings only in a non-participatory capacity.

(5) Non-curricular clubs and organizations will be allowed access to privileges (for example - use of school newspaper, bulletin boards, public address, yearbook) to the same extent as afforded to all other non-curricular groups.

**STATUTORY AUTHORITY:**                                    1001.41; 1001.42, F.S.

**LAWS IMPLEMENTED:**                                       1001.43; 1006.07;
                                                           1006.09; 1006.63, F.S.

**HISTORY:**                                               ADOPTED: 8/12/13
                                                        REVISION DATES(S):
                                                     BOARD REVIEW: 5/13/13

**Lake 4.501**

## MIDDLE SCHOOL STUDENT CLUBS AND ORGANIZATIONS

(1) This policy applies to all school clubs and organizations at all District Middle Schools.

(2) Middle School clubs and organizations are an extension of the school curriculum. Middle School clubs must be sponsored by the school and are limited to organizations that strengthen and promote critical thinking, business skills, athletic skills, and performing/visual arts. Schools may also establish organizations relating to academic honor societies and student government and clubs that are directly related to the curriculum.

(3) All student clubs and organizations must be approved by the Superintendent before they can operate at a school.

(4) All prospective clubs must submit a District approved application. The application shall include a club charter which shall set forth the purposes, qualifications for members, and the rules of conduct and shall be maintained on file for reference by all students and school employees.

(5) All student clubs and organizations shall obtain a Consent Form from the parents of each participating student, on a form provided by the District.

(6) A student club or organization shall not conduct any activity or act which violates Florida Statutes, School Board rules, or the regulations of the school.

(7) Any club or organization which engages in an initiation ceremony for its members shall prepare and submit the program of initiation exercises to the school principal for review and approval.

(8) There shall be no type of hazing in any club or organization within any school. Hazing is defined as any action or situation for the purpose of initiation or admission into or affiliation with any club or organization operating at a school pursuant to this policy, which recklessly or intentionally endangers a student's mental or physical health or safety.

(9) The decision of the members of an organization shall not be one of the factors in selecting additional members.

(10) Secret societies, fraternities and sororities are prohibited per Section 1006.14, Florida Statutes.

(11) Clubs/ organizations will be assigned an employee/sponsor by the principal. The employee/ sponsor shall be present at all meetings.

(12) All social events shall be adequately chaperoned.

(13) At the discretion of the School Board and consistent with School Board policy, the employee/ sponsor may be compensated by the school.

(14) All monies accruing to a club or organization shall be accounted for through the school's internal accounting system.

(15) All meetings shall be held on School Board property. This may be waived for special meetings and events upon the faculty sponsor's request and principal's approval.

(16) Any dues charged shall be reasonable and not prohibitive. Admission fees will not be charged.

**STATUTORY AUTHORITY:**                          **1001.41; 1001.42, F.S.**

**LAWS IMPLEMENTED:**                               **1001.43; 1006.07;**
**1006.09; 1006.63, F.S.**

**HISTORY:**                                                    **ADOPTED: 8/12/13**
**REVISION DATE(S):**
**BOARD REVIEW: 5/13/13**

Lake 4.502

## ELEMENTARY SCHOOL STUDENT CLUBS AND ORGANIZATIONS

(1) This policy applies to all school clubs and organizations at all District Elementary Schools.

(2) Elementary School clubs and organizations are formed to further academic, athletics and socialization skills of the elementary school students and to promote critical thinking. Due to the age and maturity level of the students who attend elementary schools, only school-sponsored clubs and organizations will be allowed to operate or meet on campus during school hours.

(3) All student clubs and organizations must be approved by the Superintendent before they can operate at a school.

(4) All prospective clubs must submit a District approved application. The application shall include a club charter which shall set forth the purposes, qualifications for members, and the rules of conduct and shall be maintained on file for reference by all students and school employees.

(5) All student clubs and organizations shall obtain a Consent Form from the parents of each participating student, on a form provided by the District.

(6) A student club or organization shall not conduct any activity or act which violates Florida Statutes, School Board rules, or the regulations of the school.

(7) Any club or organization which engages in an initiation ceremony for its members shall prepare and submit the program of initiation exercises to the school principal for review and approval.

(8) There shall be no type of hazing in any club or organization within any school. Hazing is defined as any action or situation for the purpose of initiation or admission into or affiliation with any club or organization operating at a school pursuant to this policy, which recklessly or intentionally endangers a student's mental or physical health or safety.

(9) The decision of the members of an organization shall not be one of the factors in selecting additional members.

(10) Secret societies, fraternities and sororities are prohibited per Section 1006.14, Florida Statutes.

(11) Clubs/ organizations will be assigned an employee/sponsor by the principal. The employee/ sponsor shall be present at all meetings.

(12) All social events shall be adequately chaperoned.

(13) At the discretion of the School Board and consistent with School Board policy, the employee/ sponsor may be compensated by the school.

(14) All monies accruing to a club or organization shall be accounted for through the school's internal accounting system.

(15) All meetings shall be held on School Board property. This may be waived for special meetings and events upon the faculty sponsor's request and principal's approval.

(16) Any dues charged shall be reasonable and not prohibitive. Admission fees will not be charged.

**STATUTORY AUTHORITY:**                                    **1001.41; 1001.42, F.S.**

**LAWS IMPLEMENTED:**                                    **1001.43; 1006.07; 1006.09; 1006.63, F.S.**

**HISTORY:**                                    **ADOPTED: 8/12/13**
**REVISION DATE(S):**
**BOARD REVIEW: 5/13/13**

Lake 4.503

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA - OCALA DIVISION

CARVER MIDDLE SCHOOL
GAY-STRAIGHT ALLIANCE, an
unincorporated association; and H.F.,
a minor by and through parent Janine
Faughnan,

     Plaintiffs,

v.                             CASE NO. 5:13-cv-623-oc-10 PRL

SCHOOL BOARD OF LAKE
COUNTY, FLORIDA,

     Defendant.

---

## AFFIDAVIT OF AURELIA COLE

STATE OF FLORIDA
COUNTY OF LAKE

     ON THIS DAY personally appeared before me, the undersigned officer, duly authorized to administer oaths and take acknowledgments, AURELIA COLE, who after being by me first duly cautioned and sworn, upon his oath says:

     1.     I am over the age of eighteen (18) years and have personal knowledge of the matters contained in this Affidavit.

     2.     I am employed as the Chief of Administration for Lake County Schools.

     3.     On December 6, 2013, I directed the principal of Carver Middle School to contact Ms. Jablonski, the teacher who submitted the application for the Gay Straight Alliance at Carver Middle School, and notify her that the application she submitted did not meet the requirements of Board Policy 4.502 and to offer her an opportunity to revise and resubmit the application. I received an email on that same date confirming that the message had been shared with Ms. Jablonski. To date, no revised application has been submitted.

     4.     The Junior National Honor Society at Carver Middle School is specifically permitted as an "academic honor society" under Board Policy 4.502.

EXHIBIT _C_

5.      Cheerleading squads at Middle Schools in Lake County have historically not been approved as a club or organization. They have been and are treated as an athletic team with a sponsor who reports to the school's Athletic Director. Cheerleading is recognized as a competitive sport by the Florida High School Athletic Association.

6.      AVID is a course offered in Lake County's middle schools. The AVID clubs, which are approved at Windy Hill Middle School, as well as East Ridge and Umatilla Middle Schools, are part of the AVID class curriculum and were approved under Board Policy 4.502 as clubs that are directly related to the curriculum.

7.      The Robotics Club at East Ridge Middle School was approved as a club directly related to the curriculum. It is established as part of the S.T.E.M. (Science, technology, Engineering and Math) initiative and the clubs promote and support that curriculum based initiative. The club also strengthens and promotes critical thinking. The Oak Park Robotics Club was disapproved, after the public record request from the ACLU, due to its' attempt to limit participation only to female students.

8.      The News Production Team at Gray Middle School and the School News Crew at Mount Dora Middle School are not being operated as clubs. They are school activities providing the news at the schools over their closed circuit network during school hours. The students met briefly before or after school to prepare for the broadcasts.

9.      The Chess Club at Mount Dora Middle School was approved as a club that strengthens and promotes critical thinking. The skills taught by the club, as listed on its application, include: Focusing, Visualizing, Thinking Ahead, Weighing Options, Analyzing Concretely, Thinking Abstractly, and Planning.

FURTHER AFFIANT SAYETH NAUGHT

_____
Aurelia Cole

Sworn to and subscribed before me
this 3rd day of February, 2014.

_Patricia Jo Painter_
NOTARY PUBLIC - STATE OF FLORIDA
PATRICIA Jo Painter
(Print Name of Notary Public)
EE 179666
(Serial/Commission Number)

PATRICIA JO PAINTER
MY COMMISSION # EE 179666
EXPIRES: June 4, 2016
Bonded Thru Notary Public Underwriters

Personally Known __✓__ or Produced Identification _____

Type of Identification Produced:

g:\user\sam\lcsb\carver m.s. gsa v lcsb\affidavit of aurelia cole.docx