Kyleen Fischer          Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida          September 30, 2014

Page 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT O FLORIDA
OCALA DIVISION
CASE NO.:  5:13-cv-00623-WTH-PRL


CARVER MIDDLE SCHOOL GAY-STRAIGHT
ALLIANCE et al,
          Plaintiffs,
vs.
SCHOOL BOARD OF LAKE COUNTY,
FLORIDA,

          Defendant.


DEPOSITION OF:          KYLEEN FISCHER
                        Taken on behalf of Plaintiff

DATE:                   TUESDAY, SEPTEMBER 30, 2014

TIME:                   4:54 P.M. - 5:44 P.M.

LOCATION:               100 W. MAIN STREET
                        LEESBURG, FLORIDA

REPORTER:               Courtney L. Wear, RMR, CRR, FPR
                        Court Reporter
                        Reported by Stenographic Means


CAB REPORTING, INC.
Post Office Box 1684
Ocala, Florida  34478
(352) 401-0080

Kyleen Fischer      Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida     September 30, 2014

Page 2

# A P P E A R A N C E S

DANIEL B. TILLEY, Esquire
ACLU FOUNDATION OF FLORIDA
4500 Biscayne Boulevard, Suite 340
Miami, Florida 33137
     E-mail: dtilley@aclufl.org
     On behalf of the Plaintiffs


BENJAMIN JAMES STEVENSON, Esquire
ACLU FOUNDATION OF FLORIDA
P.O. Box 12723
Pensacola, Florida 32591
     E-mail: bstevenson@aclufl.org
     On behalf of the Plaintiffs


STEPHANIE McCULLOCH, Esquire
McLIN BURNSED
100 West Main Street
Leesburg, Florida 34749
     E-mail: stephm@mclinburnsed.com
     On behalf of Defendants

*   *   *   *   *   *

Kyleen Fischer     Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida     September 30, 2014

Page 3

I N D E X

TESTIMONY OF KYLEEN FISCHER                          PAGE

Direct Examination by Mr. Tilley.................4
Cross-Examination by Ms. McCulloch...............34

Certificate of Oath ............................36
Reporter's Certificate .........................37

\*     \*     \*     \*     \*     \*

E X H I B I T S

PLAINTIFF'S EXHIBIT                                  PAGE

AX ............................................10
AY ............................................12

Kyleen Fischer        Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida        September 30, 2014

Page 4

1                    P R O C E E D I N G S

2              THE REPORTER:  Raise your right hand.

3              Do you swear the testimony you're about to

4         give will be the truth, the whole truth, and

5         nothing but the truth?

6              THE WITNESS:  Yes.

7    Whereupon,

8                    KYLEEN FISCHER,

9    a witness herein having been first duly sworn, was

10             examined and testified as follows:

11                  DIRECT EXAMINATION

12   BY MR. TILLEY:

13        Q.    **Good afternoon.**

14        A.    Good afternoon.

15        Q.    **My name is Daniel Tilley, and I represent the**

16   **Carver Middle School Gay-Straight Alliance and the**

17   **student, HF, in a lawsuit against the Lake County**

18   **School Board.**

19              **Are you represented by legal counsel today at**

20   **the deposition?**

21              MS. McCULLOCH:  Yes.

22              THE WITNESS:  Yes.

23   BY MR. TILLEY:

24        Q.    **Are you taking any medications that would**

25   **prevent you from being able to give full and accurate**

Kyleen Fischer        Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida        September 30, 2014

Page 5

1    answers today?

2        A.    I have just a lot of medications that I'm on.

3    Four months ago I had a major stroke.  Prior to that

4    time, no.  Right now, yes.  But they're all medical,

5    not anything else.

6        Q.    Sorry to hear about your stroke.

7        A.    So am I.

8        Q.    Those medications, do they affect your

9    ability to recall things from --

10       A.    The stroke has affected my ability to recall.

11   And it has affected my ability to focus at times.  So I

12   hope you tell me if I'm having a problem with that.

13       Q.    Absolutely.

14       A.    The stroke was May 17th.

15       Q.    Have your physicians given you any advice,

16   for example, to not sign legal documents, or anything

17   like that?

18       A.    No.  But they just said, don't do stressful

19   things.

20       Q.    Okay.  Well, I am going to try --

21       A.    Like run a political race.

22       Q.    Hopefully this shouldn't be too stressful.

23   Shouldn't be too long.

24       A.    Okay.

25       Q.    Have you ever been deposed before?

Kyleen Fischer          Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida          September 30, 2014

Page 6

1      A.    Yes, sir.

2      Q.    Can you tell me when that was?

3      A.    Approximately it was about 10 years ago.

4  Sunshine and the School Board case.  There was issues

5  at the time.  I was a member of the School Board.  I

6  can't remember detail.

7      Q.    You understand today you're under oath and

8  you have to give truthful and accurate answers to every

9  question?

10     A.    Yes, sir.

11     Q.    If you don't fully understand a question,

12  will you tell me?

13     A.    Yes, sir.

14     Q.    How did you prepare for the deposition today?

15     A.    How did I prepare for the deposition?

16  Certainly reviewed notes.  And I found that to be

17  confusing, I will tell you.

18     Q.    Which notes did you review?

19     A.    Just my own notes and some notes from the

20  meeting minutes.

21     Q.    Did you talk to anyone other than your

22  attorneys about the deposition today?

23     A.    No, sir.

24     Q.    Do you know what a GSA is?

25     A.    Yes, sir.

Kyleen Fischer     Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida     September 30, 2014

Page 7

1     Q.     Can you tell me what you understand a GSA to
2  be?
3     A.     Gay-Straight Alliance.
4     Q.     What is it your understanding that a GSA
5  does?
6     A.     It's a support system.
7     Q.     Is there anything else that you think a GSA
8  is, other than a support system?
9     A.     I think it's -- that's it's main function.  I
10  am not knowledgeable of anything more so.
11     Q.     In acting as a support system, what do you
12  think the GSA's activities are?
13     A.     GSA, from the hearings that I attended with
14  the School Board, I learned very, very much.  And GSA
15  was presented as definitely a means for students to
16  collaborate, students to meet, students to get support.
17  And I would aliken it to an AA.
18     Q.     When you say "AA," what do you mean?
19     A.     Alcoholics Anonymous.  I am an addictions
20  counselor.
21     Q.     When analogizing it to AA, it's because that
22  it's a support system, or what --
23     A.     Yes, sir.  Yes, sir.
24     Q.     Do you think a GSA is appropriate in a middle
25  school?

Kyleen Fischer          Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida          September 30, 2014

Page 8

1      A.    GSA -- I have to stop you right here.  The
2  main intent today is for the GSA?
3      **Q.    So the discussion -- I represent the**
4  **Plaintiffs in this action.**
5      A.    Yes, sir.
6      **Q.    And the Plaintiffs in this action are seeking**
7  **to be recognized as a student club at Carver Middle**
8  **School.  So I represent the Plaintiffs who are**
9  **advocating on behalf of the GSA.  And Ms. McCulloch**
10 **represents the School Board.**
11     A.    Yes, sir.  To my knowledge, at the end of the
12 first year that I met the young lady, BNS, they were
13 acknowledged as a club at the end of that school year.
14     **Q.    Was that something that you thought was**
15 **appropriate in the sense of a GSA belongs in a middle**
16 **school?**
17     A.    What I actually believe is that anything that
18 is for the good of the child, with parent consent, is
19 an appropriate instrument.  But in a middle school, I
20 believe that you should focus on academics.  And, you
21 know, I have stated that repeatedly now for two years.
22     **Q.    Does that mean that you think a GSA is not**
23 **appropriate in a middle school?**
24          MS. McCULLOCH:  Object to the form.  You can
25     answer.  I am going to be making some objections,

Kyleen Fischer          Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida          September 30, 2014

Page 9

1    but unless I tell you you can't answer, you can go

2    ahead and answer.

3             THE WITNESS:  You know, I have to -- I said

4    it just the way I did, you know?  It became an

5    accepted function of a school the last of, I

6    believe, 2013.  We dealt with the policy.  We set

7    up a policy that would be in place to help a

8    student apply for a club, have that club be a part

9    of the school.  It wasn't specifically GSA, it was

10   any student in an extracurricular function.

11            But in the middle school there had to be a

12   consent.  And I have to say, I think that is

13   appropriate.

14   BY MS. McCULLOCH:

15        Q.    **But when the GSA was recognized at the end of**

16   **that school year, we're talking about the 2012/2013**

17   **school year, right?**

18        A.    Uh-huh.

19        Q.    **When the GSA was recognized at the end --**

20        A.    No, I'm talking 2013/2014, not 2012/2013.

21            MS. McCULLOCH:  Try to listen carefully to

22   what he's talking about --

23            THE WITNESS:  Now you see where I get mixed

24   up.  I'm sorry.

25            MS. McCULLOCH:  That's okay.  But he is going

Kyleen Fischer     Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida     September 30, 2014

Page 10

1      to probably be specific about which year he's

2      talking about.  Just try to listen carefully to

3      that, and let him finish his question.  I think

4      that will help.  Just let him get the question out

5      before you start answering, and then you won't be

6      guessing at to what he's meaning, and he won't be

7      guessing as to what you're meaning.

8            MR. TILLEY:  Let me show you Plaintiff's --

9            (Discussion off the record.)

10           (Plaintiff's AX marked for identification.)

11  BY MR. TILLEY:

12      Q.   I would like to show you what I am marking as

13  Plaintiff's Exhibit AX.  Can you tell me if you

14  recognize this document?

15      A.   Yes.

16      Q.   And what is this document?

17      A.   You want me to read to you the Carver Middle

18  School Gay-Straight Alliance?

19      Q.   No, I guess I -- well, let me ask this:  Have

20  you seen this document before?

21      A.   I just said yes.

22      Q.   And is it correct to say that this is a

23  letter from Randall Marshal of the ACLU of Florida to

24  Steve Johnson regarding the desire of BNS to form a

25  Gay-Straight Alliance at Carver Middle School?

Kyleen Fischer        Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida        September 30, 2014

Page 11

1        A.    Yes, sir.

2        Q.    **Can you tell me when you saw this letter for**

3    **the first time?**

4        A.    I could not possibly begin to tell you that.

5        Q.    **Would you think it's fair to say that it was**

6    **in the days following the date on the letter,**

7    **January 23rd, 2013?**

8        A.    I would think so, yes.

9        Q.    **When you saw this letter, did it cause you**

10    **any concerns?**

11        A.    I have to be honest with you, I certainly

12    want to do what is legal and what is lawful.  And I did

13    what was expected of me at that time.  I read it.  And

14    I had counsel with Mr. Johnson, as I do on all topics,

15    as chair, okay?

16        Q.    **And you didn't discuss this letter with the**

17    **School Board members outside of the School Board**

18    **meeting, correct?**

19            MS. McCULLOCH:  Object to the form.  You can

20        answer.

21            THE WITNESS:  I am glad to answer.  I am a

22        20-year board member.  I know better than do that,

23        sir.  Any two or more board members meeting outside

24        is illegal in the state of Florida, Sunshine Law.

25    BY MR. TILLEY:

Kyleen Fischer          Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida          September 30, 2014

Page 12

 1      Q.    And I'm certainly not trying to impugn at
 2  all --
 3      A.    You don't have to impugn it, I just have to
 4  tell you, okay?  I didn't take it as impugning.
 5      Q.    Fair enough.
 6      A.    I am just telling you like it is.
 7      Q.    Okay.  Do you recall meeting soon after
 8  having a School Board workshop, soon after this letter
 9  was sent to discuss student clubs and organizations
10  policy?
11      A.    There were many of them.  There were many of
12  them, yes.
13            MR. TILLEY:  I would like to show you
14      Plaintiff's Exhibit AY.
15            (Plaintiff's AY marked for identification.)
16  BY MR. TILLEY:
17      Q.    Can you tell me what this document is?
18      A.    Well, undoubtedly it's a verbatim recording
19  of that meeting, a transcription.
20      Q.    Which meeting are you referring to?  Is this
21  the February 4th, 2013 School Board workshop?
22      A.    At the top of it, it says that, yes, sir.
23  February 4th, 2013.
24      Q.    Can you look this over and let me know if
25  this appears to be accurate?

Kyleen Fischer          Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida          September 30, 2014

Page 13

```
 1              MS. McCULLOCH:  Just object to the form.  Are
 2        you asking about her comments, or --
 3              THE WITNESS:  Yeah.
 4   BY MR. TILLEY:
 5        Q.   If you believe that this is an accurate
 6   transcription with respect to everyone's comments, then
 7   that would be -- that's my question.
 8        A.   Well, you know, I am here to tell about mine.
 9   And the paragraph, second page, that's attributed to
10   me, looks appropriate.
11        Q.   Is there any reason you have to doubt the
12   authenticity of this document?
13        A.   No, sir.
14        Q.   In that paragraph you're referring to on page
15   two?
16        A.   Yes.
17        Q.   About three-fifths of the way down there's a
18   line that says, "We have to stay pat that it is not our
19   job to socially mentor students, but to educate them.
20   And at this point, because of that, I think it's our
21   professional need to look at academics, to make sure
22   that we have clubs that are curricular based."
23        A.   That's been my general statement throughout.
24        Q.   And then following that it says, "to make
25   sure that we move forward with the insight that
```

Kyleen Fischer          Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida          September 30, 2014

Page 14

```
 1    programs in this county, speaking of FCA, will continue
 2    to exist."  Can you tell me what you meant by that last
 3    part that I just read?
 4         A.    FCAs tied to an educational curriculum.  And
 5    I think that's -- that was an appropriate statement
 6    because of that.
 7         Q.    When you say FCA, what do you mean?
 8         A.    If you're looking at this, we have clubs that
 9    are tied to curriculum and clubs that are tied to
10    agriculture, clubs that are tied to Future Farmers of
11    America, is one of them.  And that's what I was
12    speaking to.  Because there is a curriculum, and there
13    is that group that's attached to it.
14         Q.    So you're saying FCA is Future Farmers of
15    America?
16         A.    No, sir, I'm not.  And I am not sure why I
17    used that particular one at that time.
18         Q.    FCA, is that Fellowship of Christian
19    Athletes, or some other group?
20         A.    I don't know.
21         Q.    The next sentence says, "I see Mr. Scrubbs in
22    the back, he has the Genesis program."
23         A.    Yes.  That is correct.  I did see Mr. Scrubbs
24    in the audience.
25         Q.    What is the Genesis program?
```

Kyleen Fischer     Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida     September 30, 2014

Page 15

1     A.    The Genesis program is an after-school

2 program for betterment of students in impoverished

3 areas here in Leesburg.

4     **Q.    And is there a religious component to this**

5 **organization?**

6     A.    Mr. Scrubbs -- it's a way -- it's offered off

7 campus. And he is the director of that program.

8     **Q.    But the FCA referred to in the preceding**

9 **sentence, you are not sure what that refers to?**

10     A.    No, I am sorry. At that time, no, I am not.

11     **Q.    And the next sentence says, "There will be**

12 **ample opportunity for everyone to receive the**

13 **encouragement that they need. But to socially**

14 **engineer, that's not my business."**

15     A.    Yes, sir.

16     **Q.    What did you mean by "socially engineer"?**

17     A.    At the time, I don't know. I am going to be

18 honest with you. I don't know.

19     **Q.    When you say "at the time," you mean right**

20 **now, today, or --**

21     A.    Right today, I don't know what I meant at

22 that time. No.

23     **Q.    You just can't recall?**

24     A.    I can't recall, no.

25     **Q.    Do you think there's a moment in the future**

Kyleen Fischer    Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida    September 30, 2014

Page 16

1  at which you could recall?  Or do you think you've just
2  forgotten it completely?
3       A.   I think that my intent of that statement,
4  I've forgot.
5       Q.   Can you say when you were making that
6  statement that you were speaking in the context --
7  excuse me, about clubs generally, or about a particular
8  club, specifically?
9       A.   I can't say that.
10       Q.   But you do recall that you support --
11       A.   I do recall that I mentioned bullying, and
12  mental health.  And that those are issues in this
13  community, and issues in our schools.  And that I
14  wanted to remain focused on academics.
15       Q.   And not speaking about the time of these
16  statements, but speaking about today, what do you think
17  about social engineering, as you define it, in school?
18       A.   As I said, I don't even know why I used that
19  statement.  And I'm sorry.  No.
20       Q.   At the time of this first meeting in
21  February of 2013, did you have a positive or negative
22  impression of the idea of a GSA at Carver Middle
23  School?
24       A.   I did not have either.  I mean, it was a
25  topic of conversation.  We were there to gather

Kyleen Fischer       Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida       September 30, 2014

Page 17

1    information.

2          Q.    You didn't have any thoughts about whether a

3    GSA was positive or negative?

4          A.    No, sir.

5                MS. McCULLOCH:  Object to the form.

6    BY MR. TILLEY:

7          Q.    What was your understanding at the time of

8    what a GSA was?

9          A.    I've already told you that.  A support

10   system.

11         Q.    Did you know about GSAs before you read this

12   letter, Plaintiff's Exhibit AX?

13         A.    Some.  Not a lot, no.

14         Q.    What had you heard about a GSA?

15         A.    Once again, it's a support system.

16         Q.    Do you remember the context in which you

17   heard about GSAs?

18         A.    I have two nephews that are gay.  And I love

19   them to death.

20         Q.    And they talked to you about being in a GSA?

21   Or was it something that --

22         A.    You know, sir, I -- this is where I really

23   don't want to get emotional, but you're taking me

24   there.  And as I said, I love my nephews.  And I don't

25   think of it positively or negatively.  I love my

Kyleen Fischer     Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida     September 30, 2014

Page 18

1   nephews.  But that is the first time I heard it, in
2   St. Louis, Missouri, a long time ago.
3           Q.    Thank you.
4           Is it fair to say that at this February 4th,
5   2013 meeting, that that was the first time the
6   School Board discussed amending the school club policy?
7           A.    Yes, sir.  We look at policies that come to
8   us on a regular basis.  They don't come to us saying,
9   this is the soup du jour of the day.  They come to us
10  in a batch of policies that we look at.  And I am very
11  happy for the dialogue on this, I am very happy to
12  explore it with you.
13          Q.    And what is your understanding of the reason
14  why the School Board on that day discussed school club
15  policy?
16          A.    To the best of my memory, on that day it came
17  to our attention that there were cup-stacking clubs in
18  the area at some of our schools.  That the clubs that
19  were at some schools were not found at other schools.
20  That principals didn't want to make the decision as to
21  which school would be -- which club would be accepted,
22  which wouldn't.  And that we needed to look and update
23  our policy.  That was the whole intent.
24          Q.    So you're saying that it's your understanding
25  that the School Board discussed club policy on

Kyleen Fischer     Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida     September 30, 2014

Page 19

1    February 4th, 2013, solely --

2        A.    Fact-finding material.

3        Q.    -- solely because of the cup-stacking club?

4        A.    No, sir.  Solely because we had this brought

5    to your attention at the meeting, the letter --

6        Q.    When you say "this" --

7        A.    The whole purpose of the meeting, sir, was to

8    hear the issue.  And the whole purpose of the meeting

9    was to look at the policy.

10       Q.    When you say "issue," do you mean the GSA?

11       A.    The clubs, the differences in the clubs.  And

12   what campuses had clubs that had advisors, what

13   campuses gave the opportunity for stipends to be given.

14   I will be very blunt with you that I didn't know we had

15   a school that had a cup-stacking club.  That was the

16   first I had heard of it.  And from that particular --

17   this meeting forward, we asked the attorney to get us a

18   list of all the clubs that were at each school so that

19   we would have better understanding why was there any

20   kind of disparity at all.

21       Q.    How did you become aware of a cup-stacking

22   club?

23       A.    It was brought up in that meeting.

24       Q.    In the February 4th, 2013 meeting?

25       A.    I believe so, sir.

Kyleen Fischer          Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida          September 30, 2014

Page 20

1          Q.    Do you know why a discussion was on the
2    agenda?
3          A.    Probably because of the letter, wasn't it?
4          Q.    The letter about the GSA?
5          A.    I think that was the reason, yes.
6          Q.    Do you think that discussion would have
7    happened if the letter had not been sent?
8          A.    I believe so.  Because, as I said, we do get
9    a number of policies for review on a regular basis.
10   And that's a matter of fact.  And those are picked by
11   the administration, they're not necessarily picked by
12   the board.  We just have them come before us, they're
13   presented back to us when there's changes in the law.
14         Q.    Is it your understanding that there was a
15   change in the law that prompted the discussion of the
16   club's policy?
17         A.    No, sir.
18         Q.    Are you saying that --
19         A.    I'm beginning to think I don't know what I am
20   saying.  But you go right ahead.
21         Q.    Were you aware of any problems with clubs in
22   district middle schools prior to that meeting?
23              MS. McCULLOCH:  Object to the form.
24   BY MR. TILLEY:
25         Q.    I believe you talked about cup stacking.

Kyleen Fischer        Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida        September 30, 2014

Page 21

1    A.    Yes, sir.

2    Q.    **Were there other --**

3    A.    No, not to my knowledge.

4    Q.    **And just --**

5        MS. McCULLOCH:  Sorry.  Just try to let him

6    spit out his question before you -- I know you can

7    anticipate what he is going to say and we want to

8    get it over.  But it will just make her life a lot

9    easier, too, if you're not talking at the same

10   time.  And my life easier.  We're all about that,

11   right?

12       MR. TILLEY:  Trying to be.

13       MS. McCULLOCH:  Just kidding.

14   BY MR. TILLEY:

15   Q.    **And if you could, again, just tell me what**

16   **the issue that was raised with the cup-stacking clubs**

17   **were, that some schools have them and others didn't,**

18   **and the principals at the other schools didn't -- I**

19   **guess I'm -- could you just restate what the issues**

20   **with the cup stacking was?**

21   A.    I cannot.  Probably not.  And not because I

22   don't want to.  But I want to tell you that there was

23   an issue of the differences of clubs at different

24   campuses.  And that's probably the best way to answer

25   your question for me.

Kyleen Fischer          Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida          September 30, 2014

Page 22

1       Q.    What is your recollection of subsequent

2   meetings in the spring of 2013 regarding the Carver

3   GSA?  I'm talking about subsequent School Board

4   meetings.  Did you state anything about the GSA at

5   those meetings?

6           MS. McCULLOCH:  Object to the form.  You can

7       answer.

8           THE WITNESS:  Explain to me why you just said

9       that.

10          MS. McCULLOCH:  I am going to be making some

11      objections for the record.  It's just for the judge

12      to read later.  And I am not allowed to make what's

13      called speaking objections, I am only allowed to

14      say object to the form.  So it's just for purposes

15      of getting it down, in case the Court reads the

16      transcript later, to know that I objected to the

17      form of his question.

18          But unless I tell you don't answer that

19      question, or you don't have to answer that

20      question, you still need to answer the question.

21      It's just a technical objection for later on.

22          THE WITNESS:  Please repeat it.

23  BY MR. TILLEY:

24      Q.    Did you state anything about the GSA at the

25  School Board meetings in the spring of 2013?

Kyleen Fischer          Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida          September 30, 2014

Page 23

1    A.   We had open forums.

2         MS. McCULLOCH:   Object to the form.  Again,

3    go ahead.

4    BY MR. TILLEY:

5    Q.   And when you said you had "open forums," what

6    do you mean?

7    A.   The public was invited to come and speak, and

8    they did.

9    Q.   What did they speak on?

10   A.   Life experiences.

11   Q.   Regarding issues related to the GSA, or about

12   other issues?

13   A.   Their own life experiences.

14   Q.   What sorts of life experiences?

15   A.   Very personal, poignant discussions of their

16   experiences, living in a society that would not

17   acknowledge them for the person that they were.

18   Q.   When you say "the person that they were," you

19   mean someone who is gay, lesbian, bisexual or

20   transgender?

21   A.   And very happy in being in their skin.

22   Q.   Were there any individuals to your

23   recollection at those School Board meetings in the

24   spring of 2013 that spoke about cup-stacking clubs?

25   A.   I am going to go back to that, again.  It did

Kyleen Fischer     Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida     September 30, 2014

Page 24

1    come up.  Where exactly it came up, I don't know.  But

2    it was one of the issues.

3        Q.    An issue that the School Board members spoke

4    about, or an issue --

5        A.    As a difference in the schools, as to what

6    was on site on each campus.

7        Q.    Is that something that you recall members of

8    the School Board discussing, or rather individuals of

9    the public speaking in the open forum?

10        A.    It came in an open forum because that's the

11    only way we can speak, in an open forum.

12        Q.    But I mean was it one of the five

13    School Board members or the superintendent that --

14        A.    It may have been the superintendent that

15    brought it up, it may have been her assistant

16    superintendent.

17        Q.    Might it have also been a member of the

18    public?

19        A.    I can't remember that to my knowledge.

20        Q.    But you don't remember specifically a member

21    of the public addressing that issue?

22        A.    No, sir.  As I said, they were very poignant

23    statements.

24            MR. TILLEY:  I would like to show you what is

25        marked as Plaintiff's Exhibit J.

Kyleen Fischer          Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida          September 30, 2014

Page 25

```
 1    BY MR. TILLEY:
 2         Q.    Is it correct to say this is policy 4.502 of
 3    Lake County schools?
 4         A.    Yes, sir.
 5         Q.    This is policy that you voted to approve in
 6    2013, correct?
 7         A.    Correct.
 8         Q.    And that's the current policy, correct?
 9         A.    To the best of my knowledge, yes, sir.
10         Q.    And under this policy, the superintendent, or
11    her designee, decides whether to approve or disapprove
12    the club, correct?
13         A.    That's the way I read it, sir.
14         Q.    Under the policy there's no opportunity for
15    further review by anybody else, right?
16         A.    That's my understanding.
17         Q.    So the superintendent's decision is the final
18    word, correct?
19         A.    That's the way I read the policy.
20         Q.    As a consequence of this policy, the GSA was
21    not permitted to meet in the 2013/2014 school year; is
22    that correct?
23         A.    You have to file for it to have the club.
24         Q.    When you voted to approve this policy, did
25    you do so with the understanding that a GSA would not
```

Kyleen Fischer    Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida    September 30, 2014

Page 26

1    be able to meet at Carver Middle School under the
2    policy?
3            MS. McCULLOCH:  Object to the form.  You can
4        answer.
5            THE WITNESS:  I would refer to two, the
6        policy itself is for schools.  And it says that,
7        "The organizations are limited to strengthen and
8        promote critical thinking schools, athletic skills
9        and the performing visual arts."
10   BY MR. TILLEY:
11       Q.   Is it your understanding that a GSA would not
12   do those things?
13           MS. McCULLOCH:  Object to the form.  You can
14       answer.
15           THE WITNESS:  Once again, it has to be
16       critical thinking.  And it has to be -- that's my
17       answer to you.  The business skills, the athletic
18       skills and the performing visual arts, with a focus
19       on the critical thinking and the education.
20   BY MR. TILLEY:
21       Q.   So is it correct to say that you don't think
22   a GSA promotes critical thinking?
23           MS. McCULLOCH:  Object to the form; misstates
24       testimony.
25           THE WITNESS:  Now, do I get to answer this?

Kyleen Fischer     Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida     September 30, 2014

Page 27

```
 1              MS. McCULLOCH:  Yes.
 2              THE WITNESS:  It's a support system.  I don't
 3         think it is a part of the curriculum, no, sir.  Now
 4         you --
 5    BY MR. TILLEY:
 6         Q.   So the GSA -- sorry.  So a club under this
 7    policy, as you understand it, also has to be
 8    curricular?
 9         A.   Yes, sir.
10              MS. McCULLOCH:  Also object to the form.
11    BY MR. TILLEY:
12         Q.   It has to be curricular and it has to promote
13    critical thinking?
14         A.   Yes, sir.
15              MS. McCULLOCH:  Object to the form.
16    BY MR. TILLEY:
17         Q.   But it doesn't necessarily have to also
18    promote business skills, athletic skills or performing
19    visual arts?
20         A.   It is my understanding that it must fit this
21    description.
22         Q.   Would a club that promoted critical thinking
23    and was curricular that didn't promote business skills,
24    athletic skills and performing visual arts, would that
25    club be able to be approved?
```

Kyleen Fischer          Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida          September 30, 2014

Page 28

1      A.   If they could present the curriculum and show
2  that they promoted critical thinking.
3      Q.   **So those are the two requirements that**
4  **cannot --**
5      A.   As I -- that's my assumption.
6      Q.   **That you have to have those two, at the very**
7  **minimum?**
8      A.   You have to have one of them, and it would --
9  they actually go hand-in-hand.  You're not going to
10 have a curriculum today that doesn't implement critical
11 thinking, deep-ended thinking.  By the law of Florida.
12     Q.   **So if something that's curricular, or if**
13 **something's an extension of the school curriculum, it,**
14 **by definition, satisfies the critical-thinking prong**
15 **under this policy?**
16          MS. McCULLOCH:  Object to the form.
17          THE WITNESS:  To the best of my knowledge,
18     yes.
19 BY MR. TILLEY:
20     Q.   **Are there any other ways that a student club**
21 **could satisfy the critical-thinking prong of this**
22 **policy outside of it being an extension of the school**
23 **curriculum?**
24          MS. McCULLOCH:  I am going to object to the
25     form.

Kyleen Fischer     Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida     September 30, 2014

Page 29

1            THE WITNESS:   No.

2   BY MR. TILLEY:

3       Q.    **No, you said?**

4       A.    No.

5       Q.    **When you voted to approve this policy, policy**

6   **4.502, what effect did you expect it would have on a**

7   **future application by a GSA?**

8           MS. McCULLOCH:   Object to the form.

9           THE WITNESS:   I actually don't know, sir.

10   BY MR. TILLEY:

11      Q.    **You did not have an expectation of how it**

12   **would be affect the GSA in the future?**

13       A.    I had an expectation that we would meet

14   what's printed in this policy.

15       Q.    **Would --**

16       A.    And we were speaking of policy.   And the

17   policy is pretty explicit, as you see it.   And that's

18   what we voted on.

19      Q.    **And you would agree that a GSA is not**

20   **curricular, right?**

21       A.    As it's been presented to me, yes.

22      Q.    **How has it been presented to you?**

23       A.    By individuals that have come to the board

24   and presented what a GSA was, by the articles that

25   they've asked me to read.

Kyleen Fischer    Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida    September 30, 2014

Page 30

1        Q.    Did you also review the club application that
2    included a charter of the Carver GSA's proposed
3    activities and mission?
4        A.    That didn't come to me, that would have gone
5    to the superintendent.
6        Q.    Were there -- other than the discussion of
7    members of the public at School Board meetings in 2013,
8    are there any other sources of information that lead
9    you to believe that GSA's are not curricular?
10        A.    No, sir.
11        Q.    Is it fair to say that in voting to approve a
12    policy that under your understanding allows only
13    curricular clubs, you knew that that policy would not
14    allow a GSA to form at Carver Middle School?
15        A.    It's my understanding that I believe that I
16    wanted a curriculum focus at the middle school level.
17        Q.    And because you wanted a curriculum focus,
18    you did not want a GSA at Carver Middle School?
19            MS. McCULLOCH:   Object to the form.
20            THE WITNESS:   I would never say that.
21    BY MR. TILLEY:
22        Q.    Why wouldn't you say that?
23        A.    Because you're putting words in my mouth, and
24    I just would never say that.  I am saying what's in the
25    policy, sir.

Kyleen Fischer          Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida          September 30, 2014

Page 31

```
 1        Q.    Is it fair to say that under the policy the
 2   GSA cannot meet at Carver Middle School?
 3             MS. McCULLOCH:  Object to the form.
 4             THE WITNESS:  It could not -- if it has
 5        curriculum, critical thinking, meets the athletic
 6        skills, performing visual arts, then that is the
 7        preferred way that this policy presents itself.
 8   BY MR. TILLEY:
 9        Q.    That's the only way that a club can be
10   approved, correct?
11        A.    Yes.
12        Q.    And --
13        A.    At the middle school level.
14        Q.    And I believe you said that your
15   understanding is that a GSA is not curricular, under
16   your understanding, correct?
17        A.    Under my understanding.  I said that several
18   times.
19        Q.    And so it's your understanding that this
20   policy does not permit a GSA to be recognized at
21   Carver Middle School?
22             MS. McCULLOCH:  Object to the form; asked and
23        answered.
24             THE WITNESS:  It's my understanding that the
25        superintendent made a recommendation,
```

Kyleen Fischer     Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida     September 30, 2014

Page 32

1      recommendation was reviewed by the attorney, the

2      board made a vote.  That's my understanding of this

3      particular incident.

4   BY MR. TILLEY:

5      Q.   **When you say this incident, what do you mean?**

6      A.   This issue.  Excuse me.  Not incident.

7   That's -- once again, I'm sorry.

8      Q.   **But when you say this issue --**

9      A.   Sometimes I say the wrong words right now.

10     Q.   **When you say "this issue," what do you mean?**

11     A.   This particular policy that I have in front

12  of me (indicating), that you gave me.

13     Q.   **And you voted to approve this policy,**

14  **correct?**

15     A.   As it exists, yes.

16     Q.   **And under your understanding of a GSA, a GSA**

17  **could not qualify to be recognized as a student club**

18  **under this policy, correct?**

19          MS. McCULLOCH:  Object to the form.

20          THE WITNESS:  Under my understanding of the

21      policy, the focus is on critical thinking, the

22      curriculum, those skills that are identified there.

23      It doesn't speak specifically to anything but that,

24      sir.

25  BY MR. TILLEY:

Kyleen Fischer        Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida        September 30, 2014

Page 33

1      Q.    But, therefore, a GSA could not meet,

2   correct?

3            MS. McCULLOCH:  Object to the form; asked and

4       answered multiple times.

5   BY MR. TILLEY:

6      Q.    That's your understanding, that a GSA could

7   not meet under this policy, correct?

8            MS. McCULLOCH:  Object to the form.

9            THE WITNESS:  I don't see it on here, sir.  I

10      am sorry.  I don't mean to be rude to you, and

11      you're doing a fine job.

12           MR. TILLEY:  You are, too, so thank you for

13      being patient.

14   BY MR. TILLEY:

15     Q.    What I've heard you say is that, and correct

16   me if I'm wrong, is that the club policy requires clubs

17   to be curricular; is that correct?

18           MS. McCULLOCH:  Object to the form.

19           THE WITNESS:  My statement is exactly what is

20      printed.  And it's printed specifically in paren

21      two of this policy.

22   BY MR. TILLEY:

23     Q.    So are you saying something other than that,

24   clubs must be curricular?

25     A.    It states that they must be curricular.  It

Kyleen Fischer          Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida          September 30, 2014

Page 34

 1    states that they must have athletic skills, business

 2    skills, critical thinking.

 3         Q.   And under your understanding of the GSA, it

 4    does not meet that criteria in paragraph two of the

 5    policy?

 6              MS. McCULLOCH:  Object to the form.

 7              THE WITNESS:  Sir, I really have answered

 8        that before.  And --

 9    BY MR. TILLEY:

10         Q.   So the answer is, yes?

11              MS. McCULLOCH:  Object to the form.

12              THE WITNESS:  My answer is, yes.

13              MR. TILLEY:  Okay.

14              THE WITNESS:  For the fourth or fifth time.

15              MR. TILLEY:  Let's take a short break.

16              MS. McCULLOCH:  Okay.

17              (Break taken at 5:39 P.M.  Resumed at

18        5:43 P.M.)

19              MR. TILLEY:  We're done.

20              MS. McCULLOCH:  I just have a couple quick

21        questions for you, Ms. Fischer.

22                        CROSS-EXAMINATION

23    BY MS. McCULLOCH:

24         Q.   Mr. Tilley's been asking you about paragraph

25    two of policy 4.502, and that's what your understanding

Kyleen Fischer     Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida     September 30, 2014

Page 35

1   is of the policy that was adopted, it looks like

2   August 12th, 2013, relating to middle school student

3   clubs?

4        A.   Yes.

5        Q.   With respect to the criteria that are listed

6   in paragraph two, if any student club, regardless of

7   the name, if it's sufficiently demonstrated that they

8   fit one of those criteria in paragraph two, would you

9   expect that the superintendent would approve it per the

10  policy?

11       A.   Yes, I do.

12            MS. McCULLOCH:  Okay.  I don't have any

13       further questions.

14            MR. STEVENSON:  Thank you.

15            THE WITNESS:  Thank you.

16            (This proceeding concluded at 5:44 p.m.)

17

18

19

20

21

22

23

24

25

Kyleen Fischer          Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida          September 30, 2014

Page 36

1                C E R T I F I C A T E    O F    O A T H

2

3    STATE OF FLORIDA}

4    COUNTY OF LAKE   }

5              I, COURTNEY L. WEAR, Registered Professional

6    Reporter, Certified Realtime Reporter, a Notary Public

7    for the State of Florida and Court Reporter, do hereby

8    certify that KYLEEN FISCHER personally appeared before

9    me 9-30-2014 and was first duly sworn.

10             SIGNED this 10-27-2014.

11

12

13

14          

15

16

                   COURTNEY L. WEAR

17                 Notary Public-State of Florida

                   Comm No:  EE016705

18                 Expires:  December 12, 2014

19

20

21    Type Identification Produced: FL Driver's License

22

23

24

25

Kyleen Fischer          Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida          September 30, 2014

Page 37

```
1                    C E R T I F I C A T E
2      STATE OF FLORIDA   }
3      COUNTY OF LAKE     }
4              I, COURTNEY L. WEAR, a Notary Public for the
5      State of Florida and Court Reporter, do hereby certify
6      that I was authorized to and did stenographically
7      report the foregoing deposition of KYLEEN FISCHER; that
8      a review of the transcript was not requested; and that
9      pages 4 through 35, is a true record of my stenographic
10     notes.
11             I further certify that I am not a relative,
12     employee, or attorney or counsel of any of the parties,
13     nor am I a relative or employee of any of the parties'
14     attorney or counsel connected with the action, nor am I
15     financially interested in the action.
16             Signed this day of 10-27-2014.
17
18
19
                    COURTNEY L. WEAR
20
21
22
23
24
25
```