Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida   October 1, 2014

Page 1

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT O FLORIDA
OCALA DIVISION
CASE NO.:  5:13-cv-00623-WTH-PRL


CARVER MIDDLE SCHOOL GAY-STRAIGHT
ALLIANCE et al,
            Plaintiffs,
vs.
SCHOOL BOARD OF LAKE COUNTY,
FLORIDA,

            Defendant.



| DEPOSITION OF: | DEBBIE STIVENDER |
| | Taken on behalf of Plaintiff |
| DATE: | WEDNESDAY, OCTOBER 1, 2014 |
| TIME: | 12:21 P.M. - 12:49 P.M. |
| LOCATION: | 1000 W. MAIN STREET |
| | LEESBURG, FLORIDA |
| | |
| REPORTER: | Courtney L. Wear, RMR, CRR, FPR |
| | Court Reporter |
| | Reported by Stenographic Means |


CAB REPORTING, INC.
Post Office Box 1684
Ocala, Florida  34478
(352) 401-0080

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida    October 1, 2014

Page 2

A P P E A R A N C E S

DANIEL B. TILLEY, Esquire
ACLU FOUNDATION OF FLORIDA
4500 Biscayne Boulevard, Suite 340
Miami, Florida 33137
        E-mail:  dtilley@aclufl.org
        On behalf of the Plaintiffs


BENJAMIN JAMES STEVENSON, Esquire
ACLU FOUNDATION OF FLORIDA
P.O. Box 12723
Pensacola, Florida 32591
        E-mail:  bstevenson@aclufl.org
        On behalf of the Plaintiffs


STEPHANIE McCULLOCH, Esquire
McLIN BURNSED
100 West Main Street
Leesburg, Florida  34749
        E-mail: stephm@mclinburnsed.com
        On behalf of Defendants


        *    *    *    *    *    *

Debbie Stivender   Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida   October 1, 2014

Page 3

I N D E X

TESTIMONY OF DEBBIE STIVENDER                    PAGE

Direct Examination by Mr. Tilley.................4
Cross-Examination by Ms. McCulloch...............25

Certificate of Oath .............................28
Reporter's Certificate ..........................29

            *    *    *    *    *    *

PLAINTIFF'S EXHIBIT                              PAGE

AX .............................................14

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida  October 1, 2014

Page 4

```
 1                    P R O C E E D I N G S
 2            THE REPORTER:  Raise your right hand.
 3            Do you swear the testimony you're about to
 4      give will be the truth, the whole truth, and
 5      nothing but the truth?
 6            THE WITNESS:  I do.
 7  Whereupon,
 8                    DEBBIE STIVENDER,
 9      a witness herein having been first duly sworn, was
10              examined and testified as follows:
11                    DIRECT EXAMINATION
12  BY MR. TILLEY:
13      Q.    Good afternoon.
14      A.    Yeah, it is.  Your stomach's probably
15  growling.
16      Q.    Right.  My name is Daniel Tilley, I represent
17  the Carver Middle School Gay-Straight Alliance and the
18  student, HF, in a lawsuit against the Lake County
19  School Board.
20            Are you represented by legal counsel today at
21  the deposition?
22      A.    Yes (indicating).
23      Q.    Are there any medications you're taking today
24  that would prevent you from being able to focus or
25  recall things from the past?
```

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida    October 1, 2014

Page 5

 1        A.    I'm on Aleve.  I don't think that will do it.
 2   For my back pain.
 3        Q.    Okay.  Are there any other reasons that you
 4   might not be able to focus today, or recall information
 5   from the past?
 6        A.    Other than back pain, no.
 7        Q.    Okay.  Do you find that your back pain does
 8   prevent you from --
 9        A.    No.
10        Q.    Okay.
11        A.    No.
12        Q.    Have you been deposed before?
13        A.    Yes.
14        Q.    About how long ago was that?
15        A.    Oh, my gosh.  I was county commissioner, so I
16   would say eight years ago.
17        Q.    Was that related to a school issue or
18   something else?
19        A.    County commission.  It was road safety.
20        Q.    Okay.  And so just as then, you understand
21   that you're under oath today and have to give truthful
22   answers?
23        A.    Yes, sir.
24        Q.    And it's helpful if you could say yes or
25   no --

Debbie Stivender   Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida   October 1, 2014

Page 6

1      A.    Don't nod my head.  Okay.

2      Q.    And you understand that if I ask a question

3   and you answer, that I will assume you understood the

4   question?

5      A.    Yes.

6      Q.    Such that if you don't understand, you'll let

7   me know?

8      A.    Yes.

9      Q.    Okay.  How did you prepare for the deposition

10  today?

11     A.    I talked with Stephanie last night, I guess

12  whenever y'all got finished, late last night.  Went

13  over what the protocol was when you're in here.  And

14  basically that.

15     Q.    Okay.  Were there any documents that you

16  looked at?

17     A.    I just read through some minutes, while I was

18  out waiting, of some of our board meetings.  And

19  noticed that I actually wasn't at one of them, so...

20     Q.    Those board meetings were from the spring of

21  2013, or some other time?

22     A.    2013.

23     Q.    The spring of 2013?

24     A.    February, April, yes.

25     Q.    And that was it?

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida   October 1, 2014

Page 7

1       A.      That's as far as I got before you called me
2    in, so...
3       Q.      Okay.
4       A.      I read the ones from February and I read the
5    first one in April.
6       Q.      Okay.  Can you briefly tell me about your
7    educational background?
8       A.      Well, I'm not real educated, other than
9    life's experiences.  I graduated from Tavares High
10   School.  Went to Lake-Sumter.  Did not finish.  I have
11   worked for Lake County Government, the Board of County
12   Commissioners as an employee.  Then I went to work for
13   a consulting firm doing land use issues.  Worked with
14   attorneys.  And then ran for -- I was a county
15   commissioner for eight years.  Then ran for
16   School Board.
17      Q.      That's your current position?
18      A.      Yes.
19      Q.      How long have you been in that position?
20      A.      Six years.
21      Q.      Do you hold any other jobs, other than
22   School Board member?
23      A.      No.
24      Q.      You have heard of the Carver Middle School
25   Gay-Straight Alliance, correct?

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida  October 1, 2014

Page 8

1      A.    Yes.

2      Q.    And if I say Carver GSA, you know I am

3  referring to that?

4      A.    Yes, sir.

5      Q.    What is it your understanding of what a GSA

6  is?

7      A.    My understanding from the students when they

8  came to speak to us about it was that it was an

9  organization for gay and straight kids to join together

10 and discuss issues.  That's basically what I got out of

11 it.

12     Q.    What issues did you understand that would be

13 discussed at the GSA meetings?

14     A.    We're on the 2013, right?  Not the prior one.

15 Okay.

16          MS. McCULLOCH:  Hold on.  You want to clarify

17     with him.  I can't help you answer.  But if you're

18     unsure as to what he's asking you, you need to

19     clarify with him.

20 BY MR. TILLEY:

21     Q.    I'm talking about -- yeah, I guess if you

22 have a general understanding of what a GSA is, that's

23 one thing.  If you're thinking of a specific -- if

24 you're thinking of the Carver GSA, and what you learned

25 at meetings, that's another thing?

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida   October 1, 2014

Page 9

1    A.   At meetings, what the young lady and the
2  sponsor, I think it was, that got up and spoke.  It had
3  to do with the fact that they were being bullied.  And
4  this was a group that they could all meet together and
5  discuss that, how to handle it.
6    Q.   **Okay.  So your understanding at the time was**
7  **that GSAs were about discussing bullying?**
8    A.   (Witness nodding head.)
9    Q.   **Did you understand that other things would**
10 **also be discussed?**
11       MS. McCULLOCH:  Just object to the form.
12       THE WITNESS:  I don't know.
13 BY MR. TILLEY:
14    Q.   **Do you expect that there would be other**
15 **things discussed?**
16    A.   I'm sure there were other things going to be
17 discussed, any club.  I was in clubs in high school and
18 you talk about a myriad of things, so...
19    Q.   **When you say you talk about other things, you**
20 **mean things that are beyond the scope of the club's**
21 **mission?**
22    A.   It could be.  I don't know.
23    Q.   **But you're saying that students will be**
24 **students, whether they're in math club or chess club or**
25 **the GSA, they're going to just talk about other things?**

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida  October 1, 2014

Page 10

1          MS. McCULLOCH:  Object to the form.

2          THE WITNESS:  They may.

3          MS. McCULLOCH:  I'm sorry.  I am going to be

4     making objections for the record.  But unless I

5     instruct you otherwise, you can answer the

6     question.  Just for the judge to read later.

7          THE WITNESS:  Okay.

8 BY MR. TILLEY:

9     Q.   **Since that time has your understanding of**

10 **what a GSA is or does changed over time?**

11     A.   Not particularly.  I did, after they

12 presented that, I wanted to research it.  So I did look

13 online and pull up the sites that they were referencing

14 in the meeting.  But I didn't have a different opinion

15 once I read it.

16     Q.   **What sites did you look at?**

17     A.   The one -- the United States GSA, or

18 something or other.  I mean, I don't remember, I would

19 have to have minutes in front of me.  But they gave us

20 particular sites that they were using.

21          One of the speakers was from Stetson, and she

22 had made, you know, reference to a certain site.  So I

23 pulled it up.

24     Q.   **Would that have been the GSA Network,**

25 **perhaps?  Or you just -- you're not sure?**

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida    October 1, 2014

Page 11

1       A.    I am not sure.

2       Q.    When you say researching that information did

3  not change your opinion, what was your opinion?

4            MS. McCULLOCH:  Object to the form.

5            THE WITNESS:  I felt that the young lady that

6       spoke to us had some real concerns.  And that, we

7       as staff and board, needed to look at it, which is

8       what we followed up doing by looking at the policy.

9  BY MR. TILLEY:

10      Q.    At the time did you have a positive or

11  negative impression of the idea of having a Carver GSA?

12           MS. McCULLOCH:  Object to the form.

13           THE WITNESS:  I did not have either one.

14      What it brought -- what her coming to us brought up

15      was the fact that each school in our district does

16      not do the same thing.  There was no consistency.

17      And we needed to have a policy that was consistent

18      across the board.

19           One school would treat one club one way, and

20      a different club another.  And it depended on the

21      principal, and what their beliefs were at the

22      school.

23  BY MR. TILLEY:

24      Q.    What were your beliefs regarding what the

25  policy should be?

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida    October 1, 2014

Page 12

1      A.    That we needed to figure out in our own

2    minds, once we got to talking, what secondary meant.

3    And in my mind, with my four children, secondary meant

4    high school.

5          Mr. Johnson did present to us that the

6    statute's not really clear on that, that it says maybe

7    6 to 12.  But it was up to the state and how they

8    handled it.

9          So once that issue came forward, then the

10   board decided we needed to discuss that issue, as well,

11   to decide whether we felt middle school was secondary

12   or not secondary.

13     **Q.    And this discussion about amending club**

14   **policy came as a result of people talking about the**

15   **GSA?**

16          MS. McCULLOCH:  Object to the form.

17          THE WITNESS:  I would say it brought to the

18       forefront her request and her denial of that club,

19       and brought to the forefront other issues that we

20       needed to address, which was making it consistent

21       across the board.  And deciding on what we felt was

22       secondary.

23   BY MR. TILLEY:

24     **Q.    And the first workshop that you had on that**

25   **issue was in February 2013, correct?**

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida    October 1, 2014

Page 13

1    A.    Yes.

2    Q.    Were there prior discussions of amending club

3    policy at past School Board meetings?

4    A.    I know that when I first got there, I don't

5    know when the meetings were, I had talked about the

6    fact that I didn't see consistency across the board on

7    anything.  Not necessarily just clubs, but on the way

8    that principals at each school addressed things

9    differently.  So in a minor way, yes, I brought it up

10   before that.  But it was not a particular club that was

11   brought forward.

12   Q.    When you say -- I think you said in my time.

13   You mean it was six years?

14   A.    Uh-huh.

15   Q.    And do you recall when in that time that you

16   brought it up?

17   A.     No.  No.

18   Q.    Would this have been in the previous two

19   years, perhaps?  Or you just --

20   A.    I think it was probably when I first got on

21   the board and started talking to the principals and the

22   teachers and seeing how things were done at schools.

23   Q.    And since that initial time that you

24   mentioned it, were you aware of any other time that it

25   was discussed among board members?

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida  October 1, 2014

Page 14

1      A.    I don't remember any other time.  What
2  basically happened when I brought that up was staff was
3  looking at the policies, because they bring those
4  policies to the board, we don't do that.
5      Q.    The staff, you mean the --
6      A.    The superintendent's staff.
7      Q.    And who on the superintendent's staff would
8  do that, do you know?  Or could it be multiple people?
9      A.    At the time it would have been Mrs. Cole.
10      Q.    Who was --
11      A.    I don't know if anybody else helped her about
12  that, or not.
13      Q.    Who was the chief of administration; is that
14  right?
15      A.    Yes.
16      Q.    And other than the chief of administration or
17  the superintendent herself, I suppose, there wouldn't
18  be other people --
19      A.    Right.  Or designees, which I wouldn't know.
20              (Plaintiff's Exhibit AX marked for
21         identification.)
22  BY MR. TILLEY:
23      Q.    I want to show you what's marked Plaintiff's
24  Exhibit AX.  And once you've had a chance to look those
25  over, can you just tell me if you've seen this letter

Debbie Stivender   Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida    October 1, 2014

Page 15

1    before?

2        A.    I do not recall seeing this.  Mr. Johnson

3    could have given us a copy of it, but I don't remember

4    seeing the letter.

5        Q.    **Would you expect that upon receiving a letter**

6    **like that -- and just so we're clear for the record,**

7    **we're talking about a January 23rd, 2013, letter?**

8        A.    Right.

9        Q.    **Would you expect that in the normal course**

10    **you would receive such a letter distributed to the**

11    **board members?**

12            MS. McCULLOCH:  Object to the form.  You can

13        answer.

14            THE WITNESS:  Yes.  The normal procedure is

15        whomever the chairman is gets a copy of this,

16        first, with the school superintendent.  They decide

17        and put in our baskets if there's stuff that we

18        need to review.  So I wasn't the chairman at the

19        time, so... I'm sure -- you know, I'm sure at some

20        point we may have seen it, but I am not positive.

21    BY MR. TILLEY:

22        Q.    **And is it your understanding that the meeting**

23    **you had on February 4th, 2013, that first workshop in**

24    **February of 2013, that that discussion about amending**

25    **the school club policy was because of what was in this**

Debbie Stivender   Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida   October 1, 2014

Page 16

1    letter?

2              MS. McCULLOCH:   Just object to the form.

3              THE WITNESS:   That would be giving an

4        opinion, and I don't know.  Procedure would say

5        that if there's an issue like this that came up,

6        the chairman and superintendent would decide to

7        bring it forward to the board to discuss.  So it

8        would appear that that would be why it came forward

9        to us.

10   BY MR. TILLEY:

11       Q.   You're not aware of there being an agenda for

12   this policy to come up through some sort of regular

13   review?

14       A.   No, sir.

15       Q.   You're not?

16       A.   I am not aware of it, no.

17       Q.   Okay.  Are you aware generally of policies

18   coming up through regular review that the School Board

19   is going to consider?

20       A.   Well, if it's one that I want looked at, I

21   would know that it would be coming forward because I

22   would have told the superintendent I want her to look

23   at the policy, have staff look at it.  The way that we

24   find out, if you're not the chairman, the way you find

25   out is once workshop is scheduled they will let you

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida  October 1, 2014

Page 17

1    know if -- we have to workshop the policy changes.  And
2    then we have to have a public hearing, two of them, if
3    we're going to change this.  But we always workshop any
4    new policy changes.  So that's the point in which we
5    get them, unless you're the chairman.
6         Q.   **So it sounds like the options for getting**
7    **something reviewed either would be superintendent**
8    **staff, superintendent herself, or any of the five board**
9    **members?**
10        A.   Or board member.
11        Q.   **And that's it?**
12        A.   Or the attorney, if he sees that we need to
13   revise something --
14        Q.   **Okay.**
15        A.   -- he brings it forward.
16        Q.   **And that's everybody?**
17        A.   (Witness nodding head.)
18        Q.   **Yes?**
19        A.   Yes.  I keep shaking my head.  I'm sorry.
20        Q.   **We all do it.**
21             **Do you recall stating anything about the GSA**
22   **specifically during the School Board meetings in the**
23   **spring of 2013?**
24        A.   No.
25        Q.   **In April 2013, the School Board voted to**

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida    October 1, 2014

Page 18

1    table the discussion of the school club's policies; is

2    that correct?

3         A.    That's what I was reading.  Yes.  I got to

4    that part, yes.

5         Q.    And did you vote to table that discussion?

6         A.    Yes.

7         Q.    And why did you vote to table the discussion?

8         A.    Because I thought we needed to have more

9    research done on how we needed to be consistent across

10   the board with the policies.

11        Q.    Were you aware that certain board members

12   were advocating that the state legislature change the

13   legal state law definition of secondary school?

14        A.    That was brought up in the meeting.  So, yes,

15   I was aware of that.

16        Q.    Is that something that you supported?

17           MS. McCULLOCH:  Object to the form.

18           THE WITNESS:  I like clarity on issues.  So

19        if there was a need for it to be clarified that our

20        opinion of what a secondary and the state

21        legislators needed to be clarified, then I was for

22        it, yes.

23   BY MR. TILLEY:

24        Q.    And to give clarity, what was your position

25   on what the policy should look like?

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida   October 1, 2014

Page 19

1          MS. McCULLOCH:  Object to the form.

2          THE WITNESS:  Policy coming back, I felt that

3      high schools, which are 9 through 12, secondary,

4      should have open forum.  They were at an age, and

5      -- it's age appropriate for them and their parents to

6      decide which clubs they're in.

7          The middle school kids, 6 through 8, I did

8      not feel were age appropriate for making the

9      decision on which clubs they need to be.  I think

10     we even added in the policy that we wanted parents'

11     approval if it went that direction, for them to be

12     in clubs, period.

13         It was more of keeping the middle-school-age

14     children more focused on their curriculum.

15  BY MR. TILLEY:

16     Q.    So your view was that middle school clubs

17  should be curricular, correct?

18     A.    Uh-huh.  Yes, sir.

19     Q.    And you voted in August 2013 to get final

20  approval to the School Board club's policy; is that

21  correct?

22     A.    I don't remember.  I would have to look at

23  the minutes.

24     Q.    Separately from the date, do you recall

25  voting to give final approval to an amended club

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida    October 1, 2014

Page 20

```
 1   policy --
 2        A.   Yes.
 3        Q.   -- that permitted only curricular clubs to
 4   form in Lake County middle schools?
 5        A.   Yes.
 6             MS. McCULLOCH:  Object to the form.
 7   BY MR. TILLEY:
 8        Q.   Do you recall the votes on that policy?
 9        A.   No.
10        Q.   Do you recall that Bill Mathias supported
11   that policy?
12        A.   No.
13             MS. McCULLOCH:  Object to the form.
14   BY MR. TILLEY:
15        Q.   You're not sure?
16        A.   I am not sure.  I don't remember.  I would
17   have to look at the minutes.  We have so many issues,
18   and that was what, a year and a half ago?  No.
19        Q.   Fair enough.
20        A.   Okay.
21             You want this one back?
22        Q.   Sure.  I am going to show you
23   Plaintiff's Exhibit J.  Do you recognize this, policy
24   4.502?
25        A.   That's what it states on it.
```

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida   October 1, 2014

Page 21

1      Q.    Do you recognize it as a policy that you
2    voted to approve in the summer of 2013?
3      A.    I wouldn't know that unless I looked at the
4    policy that I approved.  Okay.  It says adopted
5    8/12/13.  So, therefore, it is what I voted for, yes.
6      Q.    There's no reason for you to doubt the
7    authenticity of that document?
8            MS. McCULLOCH:  I can't answer for you.
9            THE WITNESS:  No, sir, I'll go along with
10      you.  I am going to sit here and read while you're
11      doing that.
12   BY MR. TILLEY:
13     Q.    Okay.  Under the policy -- I am just going to
14   ask about the first page.
15     A.    Okay.
16     Q.    Under the policy, the superintendent or her
17   designee decides whether to approve or disapprove a
18   club, correct?
19     A.    Correct.
20     Q.    Under the policy there's no opportunity for
21   further review by anyone else, correct?
22     A.    Correct.
23     Q.    So the superintendent's decision is the final
24   word, right?
25     A.    Correct.

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida    October 1, 2014

Page 22

1      Q.    As a consequence -- well, let me say this:

2   It's your understanding that a GSA is not curricular,

3   correct?

4      A.    Correct.

5           MS. McCULLOCH:   Object to the form.

6   BY MR. TILLEY:

7      Q.    And as a consequence of this policy being in

8   place, the GSA cannot meet in middle schools in

9   Lake County, correct?

10          MS. McCULLOCH:   Object to the form.

11          THE WITNESS:   Yes.

12  BY MR. TILLEY:

13     Q.    And that was the intent of the policy, to

14  keep clubs, like the GSA out, correct?

15          MS. McCULLOCH:   Object to the form.

16          THE WITNESS:   I would not say that.   The

17      purpose of this policy being revised was to give

18      the superintendent the authority to make those

19      decisions, as if they were curricular or non

20      curricular.   We are not educators, not any of us,

21      the five of us.   Usually your board members aren't

22      educators.   So we left that up to her

23      responsibility, instead of leaving it on each

24      individual, a site-based management decision.

25  BY MR. TILLEY:

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida    October 1, 2014

Page 23

```
 1        Q.    Do you think that a GSA is inappropriate in
 2   the middle school?
 3              MS. McCULLOCH:   Object to the form.
 4              THE WITNESS:   As a School Board member, I
 5   want all students, all 41,000 of them that we have,
 6   to all be treated equally.  We felt during the
 7   discussion of what the club was actually portrayed
 8   to be by the instructor and by the students, that
 9   it was not curricular.  Therefore, no, we would not
10   do it in middle school.
11   BY MR. TILLEY:
12        Q.    Separate from the question of whether it's
13   curricular, do you think it is age inappropriate to
14   have a GSA in middle school?
15              MS. McCULLOCH:   Object to the form.
16              THE WITNESS:   I think it's age inappropriate
17   for most clubs, and I can't define that.  Most
18   clubs, at that age bracket, they are not ready for
19   a lot of things that society throws at them.
20   You're bringing up the GSA, but this policy
21   affected so many more that -- that's why we decided
22   that it was one way or the other.  It was
23   curricular and non curricular, or it was just
24   curricular.  So we chose curricular was the
25   appropriate thing for middle school.
```

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida  October 1, 2014

Page 24

1    BY MR. TILLEY:

2        Q.    **When you talk about other clubs that could**

3    **also be inappropriate, what other clubs are you talking**

4    **about?**

5            MS. McCULLOCH:  Object to the form.

6            THE WITNESS:  Inappropriate's not the right

7        word.

8    BY MR. TILLEY:

9        Q.    **I guess I'm talking about age inappropriate.**

10       A.    I don't know, we had a whole listing of them.

11   We had builders clubs, we had chess clubs, we had all

12   kinds of clubs that were being considered.  I mean,

13   that were already in practice at the schools.  So those

14   type of clubs.  We decided that we wanted it to be

15   equal among all of them, so then there would be no

16   clubs that weren't curriculum.

17       Q.    **And that included GSA, right?**

18       A.    (Witness nodding head.)

19            MS. McCULLOCH:  Object to the form.

20            THE WITNESS:  Yes, sir.

21   BY MR. TILLEY:

22       Q.    **And the builders club?**

23       A.    Builders club, chess clubs, they have a

24   cup-stacking club at one of these schools.  And, yeah,

25   there's just a variety of different things.

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida  October 1, 2014

Page 25

1       Q.    That would all not be permitted under the
2   current policy?
3       A.    Correct.
4             MS. McCULLOCH:  Object to the form.
5   BY MR. TILLEY:
6       Q.    We're done with that for now.
7       A.    Okay.
8             MR. TILLEY:  Can we take a three, four-minute
9       break?
10            MS. McCULLOCH:  Sure.
11            (Break taken at 12:46.  Resumed at
12      12:47 P.M.)
13            MR. TILLEY:  That's all we have.
14            MS. McCULLOCH:  Fair enough.  I just have a
15      quick follow-up question.
16                      CROSS-EXAMINATION
17  BY MS. McCULLOCH:
18      Q.    Ms. Stivender, if you could look at the
19  policy again.
20      A.    Yes, ma'am.
21      Q.    In number two, the second sentence there,
22  "Middle school clubs must be sponsored by the school or
23  limited organizations that strengthen and promote
24  critical thinking, business skills, athletic skills and
25  performing visual arts."  That phrase, was that phrase

Page 26

```
 1    intended to be what the School Board considers an
 2    extension of the school curriculum for club purposes?
 3         A.   Yes, ma'am.
 4         Q.   Okay.  So conceivably, any club that met one
 5    of those criteria could be approved?
 6         A.   If the superintendent felt that they met the
 7    criteria, yes.
 8         Q.   Okay.  So if the GSA could sufficiently
 9    demonstrate that they met any one of those criteria,
10    they could have been approved?
11         A.   If they --
12              MR. TILLEY:  Object to the form.
13              THE WITNESS:  If they came in and said that
14         part of what they were doing, or what they were
15         doing was critical thinking and helping with
16         bullying of students, she may have been able to do
17         that.
18    BY MS. McCULLOCH:
19         Q.   Okay.  Did the board consider the current
20    application for the 2013/'14 school year of the GSA to
21    form a club at Carver Middle School?
22         A.   I did not see that.  So it would have been
23    with Dr. Moxley.
24              MS. McCULLOCH:  Thank you.  I don't have any
25         further questions.
```

www.cabreporting.com

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida    October 1, 2014

Page 27

1          THE WITNESS:  Am I good?

2          MR. STEVENSON:  You're good.

3          (This proceeding concluded at 12:49 p.m.)

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida   October 1, 2014

Page 28

```
1           C E R T I F I C A T E   O F   O A T H
2
3     STATE OF FLORIDA}
4     COUNTY OF LAKE  }
5             I, COURTNEY L. WEAR, Registered Professional
6     Reporter, Certified Realtime Reporter, a Notary Public
7     for the State of Florida and Court Reporter, do hereby
8     certify that DEBBIE STIVENDER personally appeared
9     before me 10-1-2014 and was first duly sworn.
10            SIGNED this 10-27-2014.
11
12
13
14
15
16
```



```
          COURTNEY L. WEAR
17        Notary Public-State of Florida
          Comm No:  EE016705
18        Expires:  December 12, 2014
19
20
21    Type Identification Produced: FL Driver's License
22
23
24
25
```

Debbie Stivender  Carver Middle School Gay-Straight Alliance, et al v. School Board of Lake County, Florida  October 1, 2014

Page 29

```
 1                  C E R T I F I C A T E
 2    STATE OF FLORIDA   }
 3    COUNTY OF LAKE     }
 4              I, COURTNEY L. WEAR, a Notary Public for the
 5    State of Florida and Court Reporter, do hereby certify
 6    that I was authorized to and did stenographically
 7    report the foregoing deposition of HF; that a review of
 8    the transcript was not requested; and that pages 4
 9    through 26, is a true record of my stenographic notes.
10              I further certify that I am not a relative,
11    employee, or attorney or counsel of any of the parties,
12    nor am I a relative or employee of any of the parties'
13    attorney or counsel connected with the action, nor am I
14    financially interested in the action.
15              Signed this day of 10-27-2014.
16
17
18
                  COURTNEY L. WEAR
19
20
21
22
23
24
25
```



Randall C. Marshall
rmarshall@aclufl.org
Legal Director
ACLU Foundation of Florida
4500 Biscayne Blvd., Suite 340
Miami, FL 33137
T/786.363.2700 F/786.363.1108

Superintendent Susan Moxley
Lake County School Board
Attn: Stephen Johnson, Sch. Bd. Atty
201 West Burleigh Blvd.
Tavares, FL 32778

January 23, 2013

VIA U.S. MAIL & Email:
MoxleyS@lake.k12.fl.us
SteveJ@mclinburnsed.com

Re:   **Carver Middle School Gay-Straight Alliance**

Dear Mr. Johnson,

We represent a student at Carver Middle School, Bayli Silberstein, along with her mother, Erica Silberstein. Bayli wishes to form a Gay-Straight Alliance ("GSA") at Carver Middle School in order confront bullying, educate the school community, and promote acceptance and equality for lesbian, gay, bisexual, and transgender ("LGBT") students at Carver Middle School. To this end, she wishes the GSA to be recognized as an official student club with all the attendant benefits afforded any other noncurricular student club. However, despite her efforts, school officials have thus far not permitted her to form this club. She asked that if the request were denied that she be provided reasons in writing for the denial; instead of denying the request, school officials have simply avoided providing her an answer either way. We therefore request the Superintendent and the School Board's assistance in reversing the school's inaction and ensuring that the GSA is immediately approved as a student club.

As we understand it, students tried to form a GSA at Carver Middle School during the last school year, but then-Principal David Bordenkircher denied it. This school year, one of Bayli's friends submitted on their behalf a packet of materials regarding the club in early November, and they have yet to receive a statement from the school that the club has been approved or denied. After submitting the packet of materials, Bayli and her friend also had a lengthy conversation with current Principal Mollie Cunningham, who acknowledged the potential utility of the club but indicated that she needed to consult with the school board. Since then, there has been no definitive statement that the request to form the club has been approved or denied.

Both the First Amendment of the U.S. Constitution and federal law require that school officials treat GSAs the same as any other noncurricular clubs at the

Exhibit
PX - AX                 PX-AX
WNS D. Stivender
C. Wear, RPR, CRR   10-1-14

school. As explained by the United States Department of Education, the Equal Access Act (20 U.S.C. §§ 4071-4074) guarantees students the right to form and participate in school clubs, with wide latitude given to the proposed content of their discussions.[1] Where schools have refused to allow GSAs to form or have otherwise denied these groups equal treatment, federal courts in Florida and across the country have repeatedly held them to be in violation of the law.[2]

Under the Equal Access Act, schools may not pick and choose among clubs based on what they think students should or should not discuss. If a public school allows any student group whose purpose is not directly related to the school's curriculum to meet on school grounds during lunch or before or after school, then it cannot deny other student groups the same access to the school because of the content of their proposed discussions. The Act specifically provides that a school cannot deny equal access to student clubs because of the "religious, political, philosophical, or other content of the speech at such meetings." 20 U.S.C. § 4071(a). Thus, school officials cannot prohibit a GSA because of their personal views about LGBT people or issues. As a federal judge concluded in one GSA case:

> The Board Members may be uncomfortable about students discussing sexual orientation and how all students need to accept each other, whether gay or straight. . . . [But School Officials] cannot censor the students' speech to avoid discussions on campus that cause them discomfort or represent an unpopular viewpoint.

---

[1] *See* U.S. Dep't of Education Secretary Duncan's Letter to Colleagues Announcing Release of *Legal Guidelines Regarding the Equal Access Act and the Recognition of Student-Led Noncurricular Groups* (June 14, 2011), available at http://www2.ed.gov/policy/elsec/guid/secletter/110607.html; *see also* U.S. Dep't of Education, Legal Guidelines Regarding the Equal Access Act and the Recognition of Student-Led Noncurricular Groups, available at www2.ed.gov/policy/elsec/guid/secletter/groupsguide.doc.

[2] *See Gay-Straight Alliance of Yulee High Sch. v. Sch. Bd of Nassau Cnty.*, 602 F. Supp. 2d 1233 (M.D. Fla. 2009); *Gonzalez v. Sch. Bd. of Okeechobee Cnty.*, 571 F. Supp. 2d 1257 (S.D. Fla. 2008); *see also* Consent Decree & Order (DE 23), *Vanguard High Sch. GSA v. Yancey*, No. 5:12-cv-268 (M.D. Fla. Aug. 14, 2012); *Straights and Gays for Equality v. Osseo Area Schs.-Dist. No. 279*, 540 F.3d 911 (8th Cir. 2008); *White Cnty. High Sch. Peers Rising in Diverse Educ. v. White Cnty. Sch. Dist.*, No. 2:06-cv-29, 2006 WL 1991990 (N.D. Ga. July 14, 2006); *Boyd Cnty. High Sch. Gay Straight Alliance v. Bd. of Educ. of Boyd Cnty.*, 258 F. Supp. 2d 667 (E.D. Ky. 2003); *Franklin Cent. Gay-Straight Alliance v. Franklin Township Cmty. Sch. Corp.*, No. IP01-1518, 2002 WL 32097530 (S.D. Ind. Aug. 30, 2002); *Colin v. Orange Unified Sch. Dist.*, 83 F. Supp. 2d 1135, 1148 (C.D. Cal. 2000); *E. High Gay-Straight Alliance v. Bd. of Educ. of Salt Lake City Sch. Dist.*, 81 F. Supp. 2d 1166 (D. Utah 1999).

*Colin v. Orange Unified Sch. Dist.*, 83 F. Supp. 2d 1135, 1148 (C.D. Cal. 2000). Silencing ideas because some people do not like them is not only incompatible with the educational values of open inquiry and wide-ranging debate that are central to our free political system – it is against the law.

Our understanding is that Carver Middle School does have noncurricular clubs. For instance, Bayli contends that there is a "speed stacking club," and that the club formerly known as Fellowship of Christian Athletes ("FCA") now meets under the name "BR8" at the same time and place that the former FCA met. Because these clubs are noncurricular, the school must provide equal treatment to all clubs – including the GSA – pursuant to the Equal Access Act.

Allowing the proposed GSA to form is not just a legal duty, but it would also be beneficial to the school community. It is well documented that LGBT students face significant bullying, violence, and isolation in schools.[3] Some of the most common epithets that teens use today to disparage each other are "faggot," "dyke," and "queer." GSAs are part of the solution. A recent national survey on school safety found that the presence of a GSA at a school significantly reduces the amount of bullying experienced by LGBT students and makes them feel safer.[4] As one federal judge wrote in a GSA case, "[t]his injunction [to allow the GSA to form] is not just about student pursuit of ideas and tolerance for diverse viewpoints. As any concerned parent would understand, this case may involve the protection of life itself." *Colin*, 83 F. Supp. 2d at 1150.

The benefits of having a GSA on campus do not flow only to LGBT students. A disproportionate amount of physical violence against LGBT people of all ages is perpetrated by teenage boys. Creating an atmosphere in which bullying and violence are not tolerated and everyone is valued and respected will help make all students better citizens and better equipped for participation in the workforce that is comprised of people from all walks of life.

By protecting students' right to form a GSA, you are not only obeying the law and avoiding potential legal liability, you are promoting school safety and helping address the serious problem of anti-LGBT bullying. Given the legal

---

[3] *See* Gay, Lesbian & Straight Education Network (GLSEN), The 2011 National School Climate Survey, available at http://www.glsen.org/binary-data/GLSEN_ATTACHMENTS/file/000/002/2105-1.pdf, (finding that more than 80% of LGBT students experienced harassment at school and nearly two-thirds felt unsafe).

[4] *See* note 3, *supra.*

obligation to provide equal access and the perfectly appropriate subject matter of the proposed GSA, we expect this situation can be resolved quickly. Please advise us by February 1, 2013, that the request to form a GSA at Carver Middle School has been approved and that it may immediately begin having meetings and activities as an approved noncurricular student club.

Sincerely,

Randall C. Marshall

Randall C. Marshall

c:    Bayli Silberstein
     Erica Silberstein